**Robert HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–04–00965–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 17, 2006.

Discretionary Review Refused
Dec. 20, 2006.

---

Patrick McCann, Houston, for appellants.

Bridget Holloway, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Robert Harris, appeals his conviction for felony Driving While Intoxicated (DWI). TEX. PEN. CODE ANN. §§ 49.04, 49.09(b)(2) (Vernon 2003). After pleading not guilty by reason of insanity, appellant was found guilty by a jury. Prior to trial, appellant elected to have the trial court determine his punishment in the event he was convicted. Pursuant to the habitual felony offenders statute, the trial court sentenced appellant to twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. TEX. PEN. CODE ANN.

§ 12.42(d) (Vernon Supp.2005). Appellant asserts four issues on appeal: (1) the evidence is factually insufficient to sustain a verdict of guilty; (2) it was improper to use one of appellant's prior DWI convictions in the jurisdictional enhancement as it was more than ten years old; (3) the State improperly used the same prior DWI conviction in the jurisdictional enhancement and for assessing the punishment; and (4) the sentence imposed on appellant violates the doctrine of proportionality. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Early on the morning of January 2, 2004, appellant was clocked driving north on the Southwest Freeway at more than ninety miles per hour. After appellant pulled over onto the narrow left hand shoulder of the freeway, Houston Police Officer Ciers, using the patrol car's loudspeaker, instructed appellant to pull off the freeway four times. However, appellant did not pull his vehicle off the freeway and remained on the narrow shoulder. When Officer Ciers approached appellant's vehicle, he smelled a strong odor of alcohol and observed that appellant had a starry-eyed look to his bloodshot eyes. After appellant was unable to produce his driver's license, Officer Ciers asked appellant to step to the back of his vehicle. Ciers observed appellant stagger and noticed the alcohol odor was emanating from appellant. At the time he was stopped by Officer Ciers, ap-

pellant denied he had consumed any alcohol. However, during trial, appellant admitted to drinking two beers and at least a full bottle of Nyquil cold medicine earlier that evening.[1]

Officer Ciers, a ten-year veteran of the Houston Police Department (HPD), worked in the Traffic Enforcement Division and had completed a forty-hour DWI course. Included in this course was training on how to determine if a driver was intoxicated, as well as how to administer field sobriety tests to an intoxicated driver.[2] Initially, Officer Ciers administered a horizontal gaze nystagmus (HGN) test. Appellant exhibited all six possible clues of intoxication during the HGN test. Officer Ciers next attempted to administer the one-leg-stand field sobriety test to appellant. Appellant asked Officer Ciers to repeat the instructions four times before claiming he was unable to perform the test as a result of bad knees. Officer Ciers did not attempt to administer the walk-and-turn field sobriety test as he determined appellant would not be able to perform the test due to his bad knees.[3] In Officer Ciers' opinion, appellant was intoxicated and he placed appellant in the back of his patrol car.

Officer Ciers took appellant to the Houston Police Station where appellant agreed to provide a breath sample. Officer Mock, a certified intoxilyzer operator, administered the breath-tests after observing appellant for fifteen minutes.[4] Appellant's

---

1. There was disputed testimony regarding the quantity of Nyquil appellant consumed that evening. Officer Ciers testified appellant voluntarily told him he had consumed eight bottles of Nyquil. Appellant testified he believed he told Officer Ciers that he consumed only one-"a"-bottle of Nyquil.

2. Officer Ciers testified signs of intoxication police officers are trained to look for include bloodshot eyes, strong alcohol odors, slurred

speech, weaving while driving, speeding, and inability to maintain a single lane of traffic.

3. After moving to a gas station parking lot, Officer Ciers asked appellant if he could walk a line. Appellant, again citing his bad knees, said he could not.

4. Officer Mock was first certified as an intoxilyzer operator in 1985 and he is required to be re-certified each year. The fifteen-minute

two breath-tests, taken approximately one hour after he was initially stopped, indicated an alcohol concentration of .159 and .153. Officer Mock observed that appellant's speech was slurred and his eyes were bloodshot, and it was his opinion that appellant was intoxicated.

During appellant's trial, in addition to Officers Ciers and Mock, Rick Viser testified. Viser is a Criminalist II, technical supervisor with the HPD crime laboratory working in the breath-test program.[5] Viser's primary duty is to maintain the integrity of HPD's breath-test program. Specifically, his duties include making certain the operators are trained and supervised and to make sure the Intoxilyzer 5000 machines used in the breath-testing program are operating at all times. The Intoxilyzer 5000 machines used by HPD are approved and certified by the Texas Department of Public Safety. In addition, the overall HPD breath alcohol testing program is certified by the Texas Department of Public Safety. Viser remotely inspects the Intoxilyzer 5000 machines twice a week, and he physically inspects each machine once a month. It was Viser's opinion the Intoxilyzer 5000 machine used to test appellant was operating properly on January 2, 2004. After reviewing appellant's breath-test results and using a process called retrograde extrapolation, it was Viser's opinion appellant was legally intoxicated at the time he was driving his motor vehicle.[6]

Prior to resting, the State introduced into evidence certified copies of records establishing that appellant had been convicted of two prior DWI offenses. The first, a misdemeanor, in 1989 and the second, a felony, in 1995.

Against his trial counsel's advice, appellant testified in his own defense. Appel-

observation period is part of the breath-test procedure to assure the suspect does not place anything in his mouth or belches or does anything that might invalidate the test result. Officer Mock had also received training in recognizing intoxicated drivers.

5. Viser has a bachelor's degree in biology and had worked in the Houston Crime Laboratory for twelve years at the time of appellant's trial. Viser received extensive training to become a technical supervisor of the breath-test program, and he was first certified as a technical supervisor in 1995. Viser is required to renew his certification annually.

6. Retrograde extrapolation is a scientific theory that, based on certain known facts, including a subject's alcohol concentration at a certain point in time, the subject's alcohol concentration at either an earlier or later time can be determined. Viser did testify there were events that could lead to false positives on the breath test. According to Viser, cavities or recent dental work could hold alcohol in the mouth for a short time period ranging from five to eight minutes by which time it has dissipated. In addition, reflux or belches could impact the test results.

However, according to Viser, the Intoxilyzer 5000 is designed to pick up this residual mouth alcohol and invalidate the test. Viser also testified the presence of acetone (also known as ketones) in the subject could lead to false positives. According to Viser, the human body produces ketones in limited circumstances, such as after prolonged fasting, or if a person is on a high protein diet or a diabetic. Once again, Viser testified the Intoxilyzer 5000 is designed to pick up the presence of any ketones and invalidate the test. Finally, Viser testified that high temperatures in the testing room could have a minimal impact on the test results. However, that temperature would have to be greater than ninety-eight degrees Fahrenheit. We have searched the entire record and can find no evidence that (1) appellant belched in the five to eight minutes prior to the breath-test; (2) appellant consumed alcohol which could have remained in his cavities or dental work in the five to eight minutes before the breath-test; (3) appellant suffers from reflux or diabetes; (4) the temperature in the room where appellant was tested was ninety-eight degrees Fahrenheit or above; (5) appellant had been on a prolonged fast or on a high protein diet prior to the breath-test.

lant admitted he had five prior DWI convictions (three in 1989, one in 1994, and one in 2001), a conviction for possession of a controlled substance in 1989, and a robbery conviction in 1991. Appellant testified he got off work at midnight on January 1, 2004 and he consumed two beers and a bottle of Nyquil prior to going to bed around 2:00 a.m. on January 2, 2004. According to appellant, a female friend called him around 3:00 a.m. to meet her at the Chapultepec Restaurant on Richmond Avenue. Appellant admitted that when he was stopped a short time later by Officer Ciers, he told Officer Ciers he was on his way to his girlfriend's home and that he said nothing about going to Chapultepec Restaurant. Also, appellant testified that at the time he was arrested, he was employed at The Cheesecake Factory and Macy's. However, when he was stopped by Officer Ciers, appellant told Officer Ciers he worked at Dillards. During his trial testimony, appellant initially denied having told Officer Ciers he had taken Vicodin; however, after the videotape taken by the camera in Officer Ciers' patrol car was played, appellant admitted he had indeed told Officer Ciers he had taken Vicodin. Appellant admitted he did not know he was driving ninety-two miles per hour when he was stopped by Officer Ciers. Finally, appellant admitted that, while he was waiting in the back of Officer Ciers' patrol car, he repeatedly asked Officer Ciers to give him a break and call him a cab.

Appellant was charged with felony DWI with two prior DWI convictions as the jurisdictional enhancements.[7] The State also sought sentence enhancement pursuant to Texas Penal Code section 12.42(d), the habitual felony offender statute.[8] TEX. PEN. CODE ANN. § 12.42(d). The jury found appellant guilty as charged. The trial court deferred sentencing pending completion of a pre-sentence investigation. Prior to the pre-sentence investigation hearing, appellant filed a motion to dismiss the sentence enhancements on the basis the felony offender statute violated the due process and equal protection clauses of the Texas and United States constitutions and constituted cruel and unusual punishment under the Texas and United States constitutions. The trial court denied the motion. During the pre-sentence investigation hearing, the State admitted into evidence certified copies of the judgment and sentence in Appellant's 1991 robbery and 2001 felony DWI convictions. Appellant's counsel stated specifically that he had no objection to the admission of the prior convictions. At the conclusion of the pre-sentence investigation hearing, the trial court sentenced appellant to twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice, the minimum sentence under section 12.42(d). This appeal followed.

## DISCUSSION

### I. Factual Insufficiency of the Evidence

In his first issue on appeal, appellant argues the evidence is factually insufficient to sustain a verdict of guilty as to the intoxication of appellant.[9] We disagree.

---

7. The convictions used were a misdemeanor conviction in 1989 and a felony conviction in 1995.

8. The convictions used here were a felony conviction for DWI in 2001 and the 1991 robbery conviction.

9. As a factual-sufficiency review begins with the presumption that the evidence supporting the jury's verdict is legally sufficient, and because appellant challenges only the factual sufficiency of the evidence, he effectively concedes that the evidence is legally sufficient to

## A. Standard of Review

When evaluating a challenge to the factual sufficiency of the evidence, we review all of the evidence in a neutral light and inquire whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex.Crim.App.2004). The evidence may be factually insufficient in two ways: (1) when considered by itself, the evidence may be too weak to support a finding of guilt beyond a reasonable doubt; and (2) when balanced against the evidence supporting the verdict, the contrary evidence may be so strong that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484–85. In conducting the factual-sufficiency review, we must employ appropriate deference so we do not substitute our judgment for that of the fact finder. *Id.* at 481–82. Our evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). In conducting a factual-sufficiency review, we must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

## B. The Evidence is Factually Sufficient to Support Appellant's Conviction

■ To support appellant's conviction for felony DWI, the State was required to prove appellant operated a motor vehicle in a public place while intoxicated and he had two prior convictions for DWI. TEX. PEN. CODE ANN. §§ 49.04(a), 49.09(b)(2). The term "intoxicated" means (1) not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any other substance into the body, or (2) having an alcohol concentration of 0.08 or more. TEX. PEN. CODE ANN. § 49.01(2) (Vernon 2003). Evidence of intoxication may include (1) slurred speech, (2) bloodshot eyes, (3) the odor of alcohol on the person, (4) the odor of alcohol on the breath, (5) unsteady balance, or (6) a staggered gait. *See Cotton v. State,* 686 S.W.2d 140, 142 n. 3 (Tex.Crim.App.1985).

Initially, we review the record for evidence supporting the guilty verdict. This evidence, recounted above, when viewed in a neutral light and standing by itself, is factually sufficient to support appellant's conviction. *See Zuniga,* 144 S.W.3d at 484–85.

Next, we must balance the evidence supporting the verdict with the contrary evidence to determine if the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* In his brief, appellant points out evidence which, in appellant's view, weighs against the guilty verdict. According to appellant, this evidence includes: (1) Officer Ciers not being certified to administer the HGN test and an inexperienced officer with only two years' service with HPD; (2) Officer Ciers administered only the HGN test to appellant and not additional field sobriety tests; (3) Officer Ciers found no alcohol in the vehicle; (4) appellant's denial at the scene that he had been drinking alcohol; (5) the fact no video of appellant was taken at the police station; (6) Officer Mock's testimony that appellant knew and understood the legal warnings given to him prior to the breath test; (7) the effect dental problems and

sustain the conviction. *See Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996).

ketones could have on a breath test; and (8) Viser's supposed testimony that the Intoxilyzer 5000 was not operating properly a few days before the test.[10]

The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the evidence. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim.App.2000); *Beckham v. State*, 29 S.W.3d 148, 151–52 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The jury was free to consider any inconsistencies in appellant's testimony and to evaluate his credibility accordingly. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex.Crim.App.2000). In addition, the jury may believe or disbelieve all or part of any witness's testimony. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim.App.1998). Reconciliation of any conflicts in the evidence falls within the exclusive province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim. App.1995).

Again, we have reviewed the entire record. Based on this record, we cannot say the evidence contrary to the verdict is so overwhelming that the beyond-a-reasonable-doubt standard could not have been met. *See Zuniga*, 144 S.W.3d at 484–85. As the evidence is factually sufficient to support appellant's conviction, we overrule appellant's first issue.

## II. The State Properly Used Appellant's 1989 DWI Conviction to Enhance the Charge to Felony DWI

In his second issue, appellant argues the State's use of appellant's December 7, 1989 DWI conviction to enhance the charge against appellant to felony DWI violates Texas Penal Code section 49.09(e) as the conviction occurred more than ten years before the offense at issue in this appeal. TEX. PENAL CODE ANN. § 49.09(e) (Vernon 2003).

The Court of Criminal Appeals recently interpreted and applied the ten-year rule in *Getts v. State*, 155 S.W.3d 153, 155–56 (Tex.Crim.App.2005). In order to exclude a prior conviction from use for jurisdictional enhancement, all three conditions of section 49.09(e) must be met: (1) the prior conviction must be final; (2) the current offense must have been committed more than ten years after the latest date determined under section 49.09(e)(2); and (3) the defendant must not have been convicted of any other intoxication related offense within ten years of the latest date under section 49.09(e)(2). *Id.* at 156–57. The latest date under section 49.09(e)(2) for measuring the expiration of more than ten years is either the date of judgment of the prior conviction, the date of discharge from community supervision, the date of completion of parole, or the date the defendant completed serving a term of con-

10. Many of appellant's assertions of fact are inaccurate. Officer Ciers testified he was a ten year veteran of the HPD and had served two years in the traffic division at the time of appellant's arrest. In addition, he had been trained not only on how to handle traffic stops of persons suspected of DWI, but also received training specifically in the administration of the HGN test. In addition, Officer Ciers offered an explanation for his decision not to administer additional field sobriety tests on appellant prior to placing him under arrest, as well as the reason no video was taken of appellant at the police station. Appellant's on-the-scene statement that he had not been drinking was directly contradicted by his sworn testimony at trial that he had consumed two beers and at least a single bottle of Nyquil cold medicine. Finally, Viser did not testify the Intoxilyzer 5000 machine was not operating properly on December 26, 2003. Instead he testified the machine gave him a "reference out of tolerance" result, which resulted from his failure to allow the machine to warm up sufficiently prior to the test. Viser testified that after he allowed the machine to completely warm up, it was operating properly.

finement or imprisonment for the prior conviction. *Id.* at 156.

No matter what date is considered for appellant's 1989 conviction, the latest possible date under section 49.09(e)(2) would still be well within ten years of his next DWI conviction in 1995. TEX. PEN. CODE ANN. § 49.09(e)(3). Therefore, under *Getts,* appellant's 1989 conviction failed to meet all three conditions of section 49.09(e) and was available to enhance the offense at issue in this appeal to felony DWI. We overrule appellant's second issue.

### III. Appellant's Punishment Was Properly Enhanced Under the Texas Penal Code's Habitual Felony Offender Statute

In his third issue, appellant argues the State improperly used a prior misdemeanor DWI conviction to enhance both the charged offense to a felony and to enhance his punishment, which is prohibited under Texas Penal Code, section 49.09(g). TEX. PEN. CODE ANN. § 49.09(g) (Vernon 2003).[11] The two prior DWI convictions alleged as elements of the offense at issue in this appeal were a December 9, 1989 misdemeanor conviction and an August 23, 1995 felony conviction. For punishment enhancement purposes under Texas Penal Code section 12.42(d), the indictment alleged appellant had previously been convicted of felony DWI on May 14, 2001 and robbery on August 12, 1991. *See* TEX. PEN. CODE ANN. § 12.42(d). Appellant argues his 1989 misdemeanor conviction was improperly used to enhance both the charged offense (raising it from a misdemeanor charge to a felony pursuant to section 49.09(b)(2)) and his punishment be-

cause the same 1989 misdemeanor conviction was used to enhance his May 14, 2001 conviction to a felony. We disagree.

■ Initially, we note appellant did not object to the admission of the two prior felony convictions. In fact, appellant's trial counsel specifically stated he did not have any objections to the admission of the prior convictions. To preserve an issue for appellate review, a party is required to show (1) a timely complaint was made to the trial court, bringing the issue to the trial court's attention; and (2) the trial court ruled on the party's complaint, or the trial court refused to rule and the party objected to that refusal. TEX. R. APP. P. 33.1(a). This requirement reflects the policy that issues should initially be presented to the trial court so as to provide the trial court with an opportunity to prevent error. *Bader v. State,* 15 S.W.3d 599, 603 (Tex. App.-Austin 2000, pet. ref'd). Accordingly, we hold appellant has not preserved this issue for appellate review. *James v. State,* 997 S.W.2d 898, 901 (Tex.App.-Beaumont 1999, no pet.).

■ Even if appellant had preserved this issue for appellate review, the result would be the same. The State could not have used the 1989 conviction to enhance appellant's punishment for felony DWI because the 1989 conviction was a misdemeanor. Only two prior felony convictions can be used to enhance the punishment for felony DWI. TEX. PEN. CODE ANN. § 12.42(d); *Perez v. State,* 124 S.W.3d 214, 215 (Tex.App.-Fort Worth 2002, no pet.); *Carroll v. State,* 51 S.W.3d 797, 800 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd).

■ Elevating a misdemeanor to a felony offense by using a previous DWI con-

---

11. Texas Penal Code, section 49.09(g) provides: "A conviction may be used for purposes of enhancement under this section or enhancement under Subchapter D, Chapter 12, but not under both this section and Subchapter D." TEX. PEN. CODE ANN. § 49.09(g) (Vernon 2003).

viction does not enhance punishment, but instead creates an entirely new offense and vests the district court with jurisdiction. *Carroll,* 51 S.W.3d at 799 (citing *Gibson v. State,* 995 S.W.2d 693, 696 (Tex. Crim.App.1999)). Therefore, the 2001 felony conviction is a separate and distinct offense from the 1989 misdemeanor conviction. *Perez,* 124 S.W.3d at 216 (citing *Gibson,* 995 S.W.2d at 696). The State was not required to plead or prove the 1989 misdemeanor conviction to use the 2001 felony DWI conviction to enhance appellant's punishment. *Id.* at 216. Accordingly, the State did not improperly use the 1989 misdemeanor DWI conviction when it alleged the 2001 DWI conviction in the indictment to enhance appellant's punishment. *Id.; Carroll,* 51 S.W.3d at 801. We overrule appellant's third issue.

## IV. Appellant's Sentence Does Not Violate the Prohibition Against Cruel and Unusual Punishment

In his fourth issue on appeal, appellant argues his punishment at twenty-five years' confinement for a crime in which no person or property was harmed violates the doctrine of proportionality and is therefore cruel and unusual punishment prohibited by both the Texas and United States constitutions. The State's initial response to this issue is that appellant waived this issue as appellant never objected in the trial court to his sentence.

### A. Waiver

■■■ The State correctly observes that, to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection,

or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim.App.1998) (op. on reh'g). The State continues that the trial court must have ruled on the request, objection or motion, either expressly or implicitly. TEX. R. APP. P. 33.1(a)(1).

On November 5, 2004, the same day as the pre-sentence investigation hearing, appellant filed his Motion to Dismiss Enhancements. In his motion, appellant argued that a minimum sentence of twenty-five years in the penitentiary for a crime ordinarily punished as a misdemeanor, violated the United States and Texas constitutions as being cruel and unusual punishment. In addition, appellant's counsel raised this issue orally with the trial court during the November 5, 2004 hearing. The trial court denied appellant's motion that same day. While appellant did not use the term "doctrine of proportionality," the meaning was clear to the trial court. We hold appellant informed the trial court of the basis of his complaint at a time when the trial court could do something about it, thereby preserving the issue for appellate review. *See Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992).

### B. Appellant's Sentence Does Not Violate the Doctrine of Proportionality and is Not Cruel and Unusual Punishment

■■■ Relying primarily on *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), appellant argues that because he did not harm anyone or damage any property, his sentence is so disproportionate to his crime, which he mislabels as misdemeanor DWI, that it constitutes cruel and unusual punishment.[12] We disagree.

---

**12.** In *Solem,* the Supreme Court held that although a sentence may be within the range

permitted by statute, it nonetheless may run afoul of the Eight Amendment prohibition

The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to a crime. *Solem,* 463 U.S. at 288, 103 S.Ct. at 3009. A sentence is grossly disproportionate to the crime only when an objective comparison of the gravity of the offense against the severity of the sentence reveals the sentence to be extreme. *Hicks v. State,* 15 S.W.3d 626, 632 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Only if the reviewing court determines the sentence is grossly disproportionate to the offense will the reviewing court then consider the remaining *Solem* factors and compare the sentence to similar crimes in the same and different jurisdictions. *Id.*

Appellant's offense was not, as he argues in his brief, a misdemeanor, but a felony. In addition, appellant's sentence was not based on his conduct in this case alone. Instead, appellant's sentence was based on the habitual felony offenders statute. Under a recidivist statute, a sentence is based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. *Id.* (citing *Rummel v. Estelle,* 445 U.S. 263, 284, 100 S.Ct. 1133, 1144, 63 L.Ed.2d 382 (1980)). A state with a recidivist statute is not required to treat a defendant as if an offense was his first but is entitled to place upon the defendant the onus of one who is simply unable to bring his behavior into conformance with the criminal laws of the state. *Id.* The primary goals of a recidivist statute are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. *Id.* The point at which a recidivist against cruel and unusual punishment. *So-*

will be deemed to have demonstrated the necessary propensities and the amount of time that recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction. *Id.* (citing *Rummel,* 445 U.S. at 285, 100 S.Ct. at 1145).

Appellant has five prior DWI convictions, two of which were felonies. In addition, appellant has felony convictions for possession of a controlled substance and robbery. Appellant was not released from prison on his last DWI conviction until March 4, 2003, less than a year before his arrest on the current charge. In addition, appellant testified he did not even seek to change his conduct, unsuccessfully it turns out, until after his fifth DWI conviction. In other words, appellant has demonstrated a prolonged and pronounced inability to bring his conduct into conformity with the criminal laws of the State of Texas. If the trial court assesses punishment within the statutorily prescribed limits, the punishment is not cruel and unusual and generally will not be disturbed on appeal. *Buerger v. State,* 60 S.W.3d 358, 365 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (citing *Jackson v. State,* 680 S.W.2d 809, 814 (Tex.Crim.App.1984)). The range of punishment for conviction as an habitual felony offender with two prior convictions is twenty-five to ninety-nine years, or life. TEX. PEN. CODE ANN. § 12.42(d). The trial court sentenced appellant to twenty-five years' confinement, the minimum sentence under the habitual offenders statute. We do not find appellant's sentence grossly disproportionate to the offense he committed. As we do not find appellant's sentence to be grossly disproportionate to his crime, we do not examine the remaining *Solem* factors and the effect, if any, they might have on appel-

*lem,* 463 U.S. at 303, 103 S.Ct. at 3016.

lant's disproportionality issue. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.