Affirmed and Majority and Concurring Memorandum Opinions filed November
25, 2008








Affirmed and Majority and Concurring Memorandum Opinions filed
November 25, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00327-CR

____________

 

ERICA LOURDES SEDENO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 7

Harris County, Texas

Trial Court Cause No. 1385835

 



 

M E M O R A N D U M   O P I N I O N








A jury found appellant, Erica Lourdes Sedeno, guilty of the
misdemeanor offense of driving while intoxicated.  See Tex. Penal Code
Ann. ' 49.04 (Vernon 2003). 
The trial court sentenced appellant to 180 days= confinement in
the Harris County jail, probated for one year, and assessed a $300 fine.  On
appeal, appellant argues the trial court erred in (1) refusing to allow
appellant to refresh the State=s witness=s recollection
with information from a training manual; (2) prohibiting appellant from
admitting evidence that the horizontal gaze nystagmus test (HGN) was only 77%
accurate in predicting intoxication and not completely accurate as the State
led the jury to believe; (3) depriving appellant of her Sixth Amendment right
to confront and cross-examine; and (4) depriving appellant of her Sixth Amendment
right to present a defense by restricting cross-examination.  Finding no error,
we affirm.

Factual and Procedural Background

On June 26, 2006, Sergeant Curtis Young of the Houston
Police Department observed appellant making an illegal left-hand turn. 
Sergeant Young pulled appellant over, and as he approached the vehicle, he
noticed appellant=s eyes were glassy, smelled a strong odor
of alcohol, and noticed appellant was very talkative.  Sergeant Young asked
appellant if she had been drinking, and appellant admitted she had consumed two
glasses of wine and one beer.  Sergeant Young then asked appellant to step out
of the car so he could perform field sobriety tests.  Due to appellant=s performance on
the field sobriety tests, Sergeant Young arrested appellant for driving while
intoxicated. 

Upon arrival at the police station, Sergeant Young turned
appellant over to Officer Marisol Gonzalez.  Officer Gonzalez also performed
field sobriety tests on appellant, which were videotaped.  Appellant=s performance
again indicated intoxication.  Appellant, however, refused to provide a sample
of her breath.  Appellant was subsequently charged by information with driving
while intoxicated.

During trial, Sergeant Young testified regarding the
standardized field sobriety tests he performed on appellant.  Sergeant Young
testified the first test he performed was the HGN.  Sergeant Young explained
what the HGN test was and how he performed it.  In addition, Sergeant Young
testified appellant exhibited all six clues on the HGN test.

On cross-examination, appellant=s attorney, Andrew
Jefferson, also questioned Sergeant Young regarding the HGN test.  The
following discussion is the basis of appellant=s complaint on
appeal:








Q:      (Mr. Jefferson)  All right.  Now, let=s make sure the jury understands
what you and I know.  The HGN is accurate for predicting impairment 77 percent
of the time, correct?

[PROSECUTOR]:    Objection,
relevance.

THE COURT:          He can answer
if he knows.

THE WITNESS:      I=m not sure what the percentage is
on it.

Q:      (Mr. Jefferson)  Well, you have the book
[the National Highway Traffic Safety Administration (NHTSA) manual] in front of
you.  Do you want me to research it for you?

MR. JEFFERSON:  May I approach?

THE COURT:          The bench,
approach the bench.

(At the bench, on the record.)

THE COURT:          You=re not going to do this.  The book
is not in evidence.  We=re not going to put numbers out
there.  I let you ask; he says he doesn=t know.  We=re moving on.

[PROSECUTOR]:    Thank you, Judge.

THE COURT:          You need to
move on.

MR. JEFFERSON:  See - -

THE COURT:          I let you ask
him.  He says he doesn=t know.  That=s the end.

MR. JEFFERSON:  May I approach?

THE COURT:          Yes, but I=ve just ruled.  Would you take the
jury, please.

THE BAILIFF:        All rise.

(Jury out.)

THE COURT:          Okay.  I=ve let you ask him.  He says he
doesn=t know.  I=m not going to let you then teach
it to him.

MR. JEFFERSON:  Okay. 

THE COURT:          I mean, I don=t think that would be appropriate
so we=re  moving on.  I really don=t like when we start this
percentage thing because then we get in to, well, what if we do all four.  If I
let you open the door to all this, you know - -








MR. JEFFERSON:  He ought to know
the answers to all their questions.

THE COURT:          I don=t know if he knows or not because
that=s (sic) studies done; and different
studies have different basis; and if we go through this whole thing everybody=s studies come up with a different
number.

MR. JEFFERSON:  Okay.  Well, Judge,
the State brought this man in here.

THE COURT:          I understand he
was an expert, which is why I let you ask him, but he said I don=t know, okay.  So now we=re not going to put words in his
mouth and tell him he knows, are we?  He said he didn=t know.  If he had said, yes, it=s so and so and so and so; but that
didn=t come out.  He said he didn=t know.  I can=t make him know.

MR. JEFFERSON:  I=ve got the book here and he=s acknowledged that this is the
book he relies on; he=s been taught from.

THE COURT:          I don=t know if it=s the same edition.  They release a
new edition every year as you well know.

MR. JEFFERSON:  Well, he can say
that.

THE COURT:          Well, I don=t know what he=s going to say, which is why the
jury is not in here.

MR. JEFFERSON:  He=s the witness.  Don=t help him; don=t help him.

THE COURT:          Mr. Jefferson,
now what is it you want to ask him?

MR. JEFFERSON:  I want to ask him
if he will look at Page Roman Numeral 7-6.

THE COURT:          What year is
that book?  Let=s start with this.

MR. JEFFERSON:  2002.

THE COURT:          I have no idea
what he was trained on.  You can ask him.








MR. JEFFERSON:  He=s already been asked about the
book.  He said it looked like the book he was trained from.  He=s the witness, Judge.

THE COURT:          I know because
I do this everyday.  There=s a different book every year.  Ask him, don=t ask me.  Let=s go while the jury is out.

Q:      (By Mr. Jefferson)  I want
to show you Roman Numeral 7-6.

A:      Yes, sir.

Q:      And the statement that, under horizontal
gaze nystagmus, with four or more clues present this test is 77 percent
accurate?

A:      That=s with 0.10.  That=s not what we use here.  With a 0.08 it=s a higher average.

Q:      Do you know what the average is?

A:      Guessing, no.

Q:      Do you know?

A:      No, but I know we don=t - - the law here is not 0.10.

Q:      But you don=t know what the level of accuracy is for HGN?

A:      No, sir.

Q:      Is it a hundred percent?

A:      Not that I=m aware of, no, sir.

MR. JEFFERSON:  That=s all I have, Judge.  I=m ready.

THE COURT:          Bring the jury.

THE BAILIFF:        All rise.

(Jury in.)

THE COURT:          Please be
seated.  Please proceed.  

. . . .

Q:      (By Mr. Jefferson)  All right.  On the level
of accuracy for the HGN test, I believe you=re telling us that you do not know at what level the test
is accurate.  You know it=s not a hundred percent accurate,
correct?

A:      That=s correct.        

 








Discussion

A.      Did the
Trial Court Err in Refusing to Allow Appellant to Refresh Sergeant Young=s Recollection
with Information from the NHTSA Manual?

In her first issue, appellant argues the trial court erred
when it refused to allow appellant to refresh Sergeant Young=s recollection
regarding the effectiveness of the HGN test.  Appellant argues Sergeant Young
had previously recognized the NHTSA manual as one similar to the manual from
which he was taught; therefore, once Sergeant Young testified he did not know
the accuracy of the HGN test, appellant should have been allowed to refresh
Sergeant Young=s recollection with the manual.

 To preserve an issue for appellate review, a party is
required to show (1) a timely complaint was made to the trial court, which
stated the grounds for the ruling with sufficient specificity to make the trial
court aware of the complaint and (2) the trial court ruled on the party's
complaint, or the trial court refused to rule and the party objected to that
refusal.  Tex. R. App. P. 33.1(a).  This requirement reflects the policy that
issues should initially be presented to the trial court so as to provide the
trial court with an opportunity to prevent error.  Harris v. State, 204
S.W.3d 19, 27 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).  Furthermore,
an objection at trial must comport with an appellant=s objection on
appeal.  Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  An
objection stating one legal basis may not be used to support a different legal
theory on appeal.  Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App.
1990).








After reviewing the relevant portion of the record, we
conclude appellant failed to preserve error on this issue.  During his
discussion with the trial court, Jefferson never mentioned that he wished to
use the NHTSA manual to refresh Sergeant Young=s recollection nor
did he mention Texas Rule of Evidence 612, which deals with refreshing a
witness=s recollection.  See Tex.
R. Evid. 612.  Jefferson made comments such as:  AWell, you have the
book in front of you.  Do you want me to research it for you?@; and AHe ought to know
the answers to all their questions@; and AI want to ask him
if he will look at page Roman Numeral 7-6@; and AHe=s already been
asked about the book.  He said it looked like the book he was trained from.  He=s the witness
Judge.@  However, we
conclude Jefferson=s comments to the trial court did not
state his complaint with sufficient specificity to make the trial court aware
he wished to refresh Sergeant Young=s recollection
with the NHTSA manual.  See Tex. R. App. P. 33.1(a).  Therefore,
appellant failed to preserve this error for appellant review because his
objection at trial does not comport with his objection on appeal.  See
Wilson, 71 S.W.3d at 349.  We overrule appellant=s first issue.  

B.      Did the
Trial Court Err in Prohibiting Appellant from Admitting Evidence that the HGN
Test was only 77% Accurate?   

In her second issue, appellant argues the trial court erred
when it prohibited appellant from admitting evidence from the NHTSA manual that
the HGN test was only 77% accurate in predicting intoxication and not
completely accurate as the State led the jury to believe.  Appellant argues
this evidence would have discredited Sergeant Young=s alleged
expertise in HGN testing and shown his lack of knowledge.  In addition,
appellant claims the evidence would have shown the jury the HGN test, which was
allegedly validated as a predictor of intoxication, was subject to a 23% error
rate.

1.       Standard
of Review

An appellate court reviews a trial court=s decision to
admit or exclude evidence under an abuse of discretion standard.  Shuffield
v. State, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).  If the trial court=s decision was
within the bounds a reasonable disagreement, the appellate court should not
disturb its ruling.  Id. 

2.       Analysis








The scope of appropriate cross-examination is necessarily
broad.  Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996); see
Tex. R. Evid. 611(b).  However, the court shall exercise reasonable control
over the mode and order of interrogating witnesses and presenting evidence so
as to (1) make the interrogation and presentation effective for the
ascertainment of the truth, (2) avoid needless consumption of time, and (3)
protect witnesses from harassment or undue embarrassment.  Tex. R. Evid.
611(a).  In addition, the parameters of cross-examination remain within the
sound discretion of the trial court, which must balance probative value against prejudicial risks including undue prejudice,
embarrassment, harassment, confusion
of the issues, and undue delay.  Chambers v. State,
866 S.W.2d 9, 26B27 (Tex. Crim. App. 1993).  

In this case, after Sergeant Young testified he did not
know the accuracy rate of the HGN test, the trial court refused to allow
appellant to delve into the specific statistics provided by the NHTSA manual. 
During the conference outside the jury=s presence, the
trial judge expressed her concern about opening the door for the percentages of
all the tests, how different studies result in different statistics, and how
she was unsure whether the NHTSA edition appellant had was the same edition
Sergeant Young used in training.  After reviewing the record, we conclude the
trial court was concerned with the effective presentation of the evidence,
confusion of the issues, and undue delay, so it restricted appellant=s
cross-examination into the specific statistics.  See Tex. R. Evid.
611(a).  Thus, we cannot say the trial court abused its discretion in excluding
evidence from the NHTSA manual that the HGN test was only 77% accurate in
predicting intoxication.








Furthermore, even if the exclusion was error, we conclude
it was harmless.  While appellant was not allowed to admit evidence regarding
specific accuracy rates, appellant did succeed in admitting evidence that the
HGN test was not 100% accurate.  In the jury=s presence,
Jefferson asked Sergeant Young, A[y]ou know [the
HGN test is] not a hundred percent accurate, correct?@ and Sergeant
Young responded, A[t]hat=s correct.@  Thus, appellant
was allowed to discredit Sergeant Young=s alleged
expertise and discredit the HGN test.  Through this testimony, the jury was not
left with the impression that the HGN test was completely accurate.  Therefore,
even if error did exist, it did not affect a substantial right, and we must
disregard it.  Tex. R. App. P. 44.2(b).  We overrule appellant=s third issue.[1] 


C.      Did the
Trial Court Deprive Appellant of her Sixth Amendment Right to Confront and
Cross-Examine a Witness?

In her third issue, appellant argues by not allowing
appellant to cross-examine Sergeant Young regarding the accuracy of the HGN
test, the trial court violated her Sixth Amendment right to confront and
cross-examine a witness.

The constitutional right of confrontation is violated when
appropriate cross-examination is limited.  Carroll, 916 S.W.2d at 497. 
However, even constitutional error may be waived by failure to raise the issue
at trial.  Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). 
Specifically, a defendant waives his constitutional right to confront witnesses
if he does not object to the denial of that right at trial.  Thacker v.
State, 999 S.W.2d 56, 61 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d); see Holland v. State, 802
S.W.2d 696, 700 (Tex. Crim. App. 1991).  In addition, a party seeking to
introduce evidence must meet an objection with an argument stating the basis
for its admission.  See Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim.
App. 2005).  If the proponent of the evidence does not clearly articulate to
the trial court that the Confrontation Clause requires the admission of the
challenged evidence, he fails to do everything necessary to bring to the
judge's attention the evidence rule or statute in question and its precise and
proper application to the evidence in question and error is not preserved.  Id.
at 179B80.  It is not
enough to merely attempt to introduce the evidence or to tell the judge that
evidence is admissible.  Id. at 179.  The proponent, if he is the losing
party on appeal, must have told the judge why the evidence was admissible. Id.
at 177.








During trial, appellant did not object on Confrontation
Clause grounds.  In fact, appellant never mentioned the Sixth Amendment. 
Because appellant=s issue on appeal does not comport with
the objection made a trial, he has waived error.  See Wilson, 71 S.W.3d
at 349; Prince v. State, 192 S.W.3d 49, 58 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d).

D.      Did the
Trial Court Deprive Appellant of Her Sixth Amendment Right to Present a
Defense?

In her fourth issue, appellant argues the trial court
deprived appellant of her Sixth Amendment right to present a defense by
restricting her cross-examination of Sergeant Young concerning the accuracy of
the HGN test.

As stated above, constitutional error may be waived by
failure to raise the issue at trial.  Briggs, 789 S.W.2d at 924.  Once
again, appellant failed to assert that the trial court=s refusal to allow
this evidence violated her Sixth Amendment right to present a defense;
therefore, appellant did not preserve error.  See Reyna, 168 S.W.3d at
179; Wilson, 71 S.W.3d at 349.  We overrule appellant=s fourth issue.

Conclusion

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

 

/s/      John S. Anderson

Justice

 

 

Judgment rendered
and Majority and Concurring Memorandum Opinions filed November 25, 2008.

Panel consists of
Justices Anderson, Frost, and Senior Justice Hudson.*

Do Not Publish C Tex. R. App. P. 47.2(b).        









[1]  In her analysis, appellant also argues she should have
been allowed to use the NHTSA manual as a learned treatise to impeach Sergeant
Young.  However, appellant failed to make this argument in the trial court. 
Therefore, appellant failed to preserve error.  See Tex. R. App. P.
33.1(a); Wilson, 71 S.W.3d at 349.





*  Senior Justice J. Harvey Hudson sitting by
assignment.