

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00184-CR

_____

WILLIAM HOWARD NELSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 08F0195-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

When William Howard Nelson could not find his crack cocaine, he accused two young "professional" women in his residence of stealing the drugs.   He forced the women to disrobe so he could search for his drugs; not finding the contraband, he shot one of the women.   For this, he was convicted of aggravated assault with a deadly weapon.   We affirm the trial court's judgment because (1) Nelson was not entitled to a jury instruction on defense of property, (2) the trial court has remedied the lack of an affirmative deadly-weapon finding in Nelson's judgment, and (3) Nelson failed to preserve his complaint regarding notice of enhancement allegations.

Nelson lived in an "apartment"[1] in Texarkana, Texas.   On several occasions, he allowed Donna Taylor and Annie Bagsby, prostitutes, to stay in his apartment where they could shower and sleep.   Nelson would sleep in his bed; the women, on a couch.   Nelson was a crack cocaine dealer, and the women had regularly purchased drugs from him.   On December 19, 2007, the women had been in and out of Nelson's apartment, which they said was normal.   At one point, they came to the apartment to buy twenty dollars' worth of crack cocaine.   Taylor said Nelson was very intoxicated at the time.   When he could not find the drugs, he accused the women of stealing them.   Although they denied his accusation, Nelson pointed a gun at them and told them to take off their clothes so he could search them.   The drugs were not found, and Nelson allowed the women to dress.   At that point, continuing his accusations, he shot Bagsby in the abdomen or

---

[1]There was some indication Nelson's "apartment" was a room in his parents' home.

midsection. He then told Taylor to inspect Bagsby's vaginal area, ordering Taylor to pull Bagsby's pants down. Nelson again shot Bagsby—this time in the buttocks—and told Taylor to "Get this white bitch out of his house." Before the women could leave, though, Nelson pointed his pistol at Bagsby's head and threatened to kill her. Taylor helped Bagsby out of the apartment and to a nearby hospital.

When Nelson was later approached by police, he denied knowledge of the shooting and did not make any assertions of stolen drugs or that he had been the victim of any burglary. A Bowie County jury found Nelson guilty of aggravated assault with a deadly weapon. At punishment, after Nelson pled "true" to two enhancement allegations, the jury found those enhancements true and recommended a sentence of sixty years' imprisonment.

*(1)*    *Nelson Was Not Entitled to a Jury Instruction on Defense of Property*

At trial, Nelson asked for an instruction in the jury charge "about an individual's right to protect their property or protect their home in the event of a burglary." The trial court denied the request, saying there was no evidence to support the instruction.

An accused is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, whether it is unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). If

3

the evidence does not raise an issue on the defense, an instruction is not required. *See Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

> A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.

TEX. PENAL CODE ANN. § 9.41(a) (Vernon 2003). Nelson's theory is that Taylor and Bagsby took his crack cocaine, which fact then triggered Nelson's right to defend his property. This theory fails for various reasons.

First, Nelson could not have "lawful possession" of crack cocaine. *Breakiron v. State*, 79 S.W.3d 103, 106 (Tex. App.—Texarkana 2002, no pet.). Breakiron contended he had a greater right to either cocaine or marihuana, which he claimed had been taken by the victim, and he therefore was entitled to a jury instruction of defense of property. Writing for this Court, former Chief Justice Cornelius pointed out that "[l]awful possession is defined as the possession of a controlled substance that has been obtained in accordance with state or federal law." TEX. HEALTH & SAFETY CODE ANN. § 481.002(24) (Vernon 2010). As in *Breakiron*, the instant record has no evidence that Nelson somehow had lawful possession of the crack cocaine he accused Bagsby and Taylor of stealing.

*Breakiron* bore another similarity to the instant case. In *Breakiron*, the victim, Breakiron's girlfriend, testified the two argued, which led to Breakiron assaulting the girlfriend,

4

because Breakiron thought she had "stole[n] his drugs again.  He was angry . . . ."  *Breakiron*, 79

S.W.3d at 106.  Our opinion pointed out there was no testimony or evidence that Breakiron was

> trying to prevent the taking or interference with his drugs, or that there was any struggle between Breakiron and the victim over the possession of any drugs or any other property.  The most that may be inferred from the testimony is that Breakiron was angry with the victim for some previous event and was assaulting her in retribution for that.  Such evidence does not raise an issue of protection or defense of property.

*Id*.  In Nelson's case, the two women testified Nelson was drunk and could not find his crack

cocaine, and then accused them of taking it.  This does not raise an issue of protection or defense

of property.

Second, in order to claim defense of property, a defendant must admit to the criminal

conduct with which he or she has been charged and then assert the statutory defense.  *VanBrackle*

*v. State*, 179 S.W.3d 708, 715 (Tex. App.—Austin 2005, no pet.) (citing *Young v. State*, 991

S.W.2d 835, 838 (Tex. Crim. App. 1999)).  Accordingly, a defendant is not entitled to a jury

instruction on defense of property "if, through his own testimony or the testimony of others, he

claims he did not perform the assaultive acts alleged, or that he did not have the requisite culpable

mental state, or both."  *Id.* at 715.  Compare also *Juarez v. State*, No. PD-0666-09, 2010

WL 1222680 (Tex. Crim. App. Mar. 31, 2010) (confession and avoidance doctrine applies where

defendant sought instruction on defense of necessity; defendant entitled to defense instruction

because, under facts of case, he admitted to offensive conduct and to statutory *mens rea*).  Here,

5

Nelson did not admit shooting Bagsby. Detective Lisa Green stated that, when she tried to talk to Nelson about the incident, he claimed to know nothing about the shooting, and he said nothing to the detective about any alleged burglary.[2]

Nelson was not entitled to an instruction on defense of property, and the trial court did not err in denying Nelson's request.

*(2)     The Trial Court Has Remedied the Lack of an Affirmative Deadly-Weapon Finding in Nelson's Judgment*

The jury found Nelson "guilty of Aggravated Assault with a Deadly Weapon as charged in the indictment"; and the verdict included an affirmative finding on a separate "special issue," finding Nelson "used a deadly weapon, a pistol, during the commission of the offense." In fact, after the jury verdict was read, stating the jury found Nelson "guilty of aggravated assault with a deadly weapon as charged in the indictment," the State asked if there had been a finding on the submitted special issue of use of a deadly weapon. The jury had answered that question "Yes." Later, after the trial court had dismissed the jury and pronounced sentence, the attorney for the State made the following comment:

---

[2]It is worth pointing out that, even if there was any evidence entitling Nelson to assert his claim of defense of property, the record is completely devoid of any justification for his use of deadly force—shooting Bagsby twice and putting the gun to her head and threatening to kill her. *See Armstrong v. State*, 179 S.W.3d 84, 88 (Tex. App.—Fort Worth 2005, no pet.) (no evidence supporting Armstrong's assertion victim had knife, and therefore, Armstrong was justified in stabbing victim); *Hudson v. State*, 145 S.W.3d 323, 325 (Tex. App.—Fort Worth 2004, pet. ref'd) ("When there is no evidence of a belief that force is needed to defend property, a criminal defendant is not entitled to a jury instruction on defense of property."); *Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App.—El Paso 1996, pet. ref'd) (although there was evidence defendant's home had been site of drive-by shooting, that event had already occurred earlier in evening, hence no evidence to support defensive use of deadly force).

[State's Attorney]   Judge, the only other thing, I believe that in that judgment it needs to also pronounce the fact that there was an affirmative finding of the use of a deadly weapon.

THE COURT:   Yeah, and the jury did find that and that was listed in the document, but I would note that the jury previously did find that it was aggravated assault with a deadly weapon with an affirmative finding of a deadly weapon.

Although the trial court's statement may not be perfectly clear, the jury's verdict contained an explicit affirmative finding, and Nelson never argued or objected that a deadly-weapon finding had not been made. Here, the record presents a situation where the oral pronouncement of sentence did not agree with the written judgment. The trial court's judgment listed the offense for which Nelson had been convicted as "AGGRAVATED ASSAULT BODILY INJURY – DEADLY WEAPON," but in the space to indicate whether the judgment included a finding on deadly weapon, the judgment reads, "N/A." The trial court later entered an amended judgment, however, stating in the same space that a deadly weapon, a firearm, had been used.

As a general rule, when the oral pronouncement of sentence and the written judgment differ, the oral pronouncement controls. *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005); *see also Ex parte Thompson*, 273 S.W.3d 177, 178 n.3 (Tex. Crim. App. 2008) (when oral pronouncement of sentence and written judgment vary, oral pronouncement controls and written judgment can be corrected via nunc pro tunc). A nunc pro tunc judgment is appropriate to correct clerical errors in a judgment. A clerical error is one "in which no judicial reasoning contributed to [its] entry, and for some reason [was] not entered of record at the proper time."

7

*State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); *State v. Dudley*, 223 S.W.3d 717, 721–22 (Tex. App.—Tyler 2007, no pet.); *see also* TEX. R. APP. P. 23.1.   Nunc pro tunc orders are not appropriate to address "judicial errors," that is, errors that are the product of judicial reasoning or determination.   *Bates*, 889 S.W.2d at 309; *Dudley*, 223 S.W.3d at 722.

Here, the trial court's amended judgment was an appropriate remedy to make the written judgment correctly reflect proceedings in the trial court; the jury clearly made an affirmative finding that Nelson used or exhibited a deadly weapon, and the trial court's judgment now correctly reflects that finding.   *See Ex parte Poe*, 751 S.W.2d 873, 875–76 (Tex. Crim. App. 1988) (en banc) (once jury finds defendant used or exhibited deadly weapon during commission of offense, trial court must enter in judgment a finding that deadly weapon was used or exhibited); *Jones v. State*, 795 S.W.2d 199, 200 n.1 (Tex. Crim. App. 1990) (purpose of nunc pro tunc order is to have court records accurately reflect judgment actually rendered).

These points of error are overruled.

(3)     *Nelson Failed to Preserve His Complaint Regarding Notice of Enhancement Allegations*

At the beginning of the punishment phase, the State read to the jury two prior felony convictions for the purpose of seeking an elevated punishment range.   *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2009).   The indictment had alleged two prior Texas convictions, but when the State's attorney read the enhancement allegations at the beginning of punishment, he instead read one of the Texas convictions specified in the indictment and a felony conviction from

Arkansas. Nevertheless, Nelson pled true to both allegations. Nelson now claims that the oral notice of the State reading that Arkanasas conviction was insufficient. We need not address that claim, because no error was preserved.

We find nothing in the record indicating the State ever gave any form of notice that it would use an Arkansas conviction to enhance Nelson's range of punishment. Nevertheless, when the State read the details of that Arkansas conviction as well as one of the Texas convictions contained in the indictment's habitual-offender paragraph, Nelson made no objection.[3] Rather, he pled "true" to both enhancement allegations. When the State offered pen packets, containing judgments of conviction for the Arkansas felony and the two Texas felonies, Nelson, through his attorney, said, "Your Honor, those have been provided to me. We have no objections." No objection having been made, we find Nelson failed to preserve for appellate complaint his argument that he did not receive sufficient notice of the State's intent to use the Arkansas conviction for enhancement purposes.

Nelson cites *Luken v. State*, 780 S.W.2d 264, 268 (Tex. Crim. App. 1989), for the proposition that "a defendant need not object to an indictment that lacks a notice of enhancement in order to preserve the issue for review." However, *Luken* involved the State's failure to give the

---

[3]The Texas Court of Criminal Appeals has held that when the enhancement allegations are read at the beginning of the punishment phase, and the defendant offers no defense and does not request a continuance, constitutionally sufficient notice has been provided. *Villescas v. State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) ("due process does not even require that the notice be given before the guilt phase begins"; and where defendant does not offer defense to enhancement allegations or suggest he or she needs continuance in order to prepare defense, "notice given at the beginning of the punishment phase satisfies the federal constitution" ).

9

defendant notice that the State would seek an affirmative finding on the use or exhibition of a deadly weapon. Luken did not object to the indictment's lack of a deadly-weapon allegation. The Texas Court of Criminal Appeals pointed out that, in the circumstances of that case, Luken had no reason to suspect the State would seek such a finding until it asked for a special issue on the matter in the guilt/innocence charge. It is true the *Luken* court "analogize[d] . . . to submission of enhancement counts at the punishment stage of trial." *Luken*, 780 S.W.2d at 268. But that discussion, and indeed most of the discussion in *Luken*, focused on the indictment's lack of notice that the State would seek a finding on use or exhibition of a deadly weapon. The holding of the Texas Court of Criminal Appeals in *Luken* centers on the fact that, in light of the then recently enacted Texas Code of Criminal Procedure Article 1.14(b), an indictment is not defective merely because it omits a deadly-weapon notice, or, conceivably, enhancement allegations. It may be that Nelson interprets the following as relieving him of the duty to object to the lack of notice:

> we would not hold that a trial court is authorized to find, or to submit the question to the jury whether an accused has been formerly convicted for purposes of enhancement of punishment under Chapter 12 of the Penal Code, on the theory that the accused failed to object that the indictment did not include enhancement allegations. Again, there is no "defect, error, or irregularity" in an indictment containing no enhancement counts. It simply fails to place the accused's status as a recidivist in issue. . . . We similarly decline to hold that under Article 1.14(b), supra, an accused must object before trial to the failure of the State's pleadings to allege use or exhibition of a deadly weapon in order to preserve any challenge to submission of that issue to the factfinder.

*Id.*

Unlike Luken, Nelson was made aware that his status as a recidivist was in issue, as the

10

indictment alleged two prior felony convictions under the title "HABITUAL OFFENDER NOTICE" and the possibility of an enhanced range of punishment of not less than twenty-five years, or more than ninety-nine years or life, was discussed at voir dire.

We also find it significant that *Luken* predates *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), which detailed three categories of rights: those which must be specifically invoked or else forfeited, those which must be explicitly waived, and those which cannot be waived. We have found no authority indicating that notice of enhancement allegations, especially in a situation such as this where the defendant was clearly on notice that enhancement was being pursued, is a right which either cannot be waived or must be explicitly waived. We, therefore, find that Nelson failed to preserve his claim of lack of advance notice regarding the State's use of the Arkansas conviction for enhancement purposes. *See Harris v. State*, 204 S.W.3d 19, 27 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).[4] In this connection, it is worth emphasis that Nelson evinced no surprise or objection when the prospect of the enhanced sentence range was broached in voir dire, that he later pled true to the announced enhancement convictions, and that, when the State tendered into evidence the pen packets—providing the judgments

---

[4]Harris was convicted of felony DWI, and his sentence was enhanced under Section 12.42(d) of the Texas Penal Code. On appeal, he claimed error, saying that one misdemeanor DWI conviction was used to elevate his instant charge to a felony; but that same misdemeanor had previously been used as a predicate to secure a prior felony DWI conviction, which was then used to enhance his range of punishment at his current trial. The appellate court found that Harris failed to preserve this complaint with a timely trial objection. *Harris*, 204 S.W.3d at 27. Harris, just like Nelson, was clearly aware that enhancement was being sought.

11

establishing the enhancement allegations—he affirmatively stated that he had no objection to their admission and expressly acknowledged that they had been provided to him earlier.

Finally, we point out that Nelson's situation is different from those where a defendant pleads "true" to enhancement allegations or otherwise fails to object; but later complains that a prior conviction used for enhancement purposes was not final or otherwise did not properly engage the applicability of the habitual-offender statute. *See Williams v. State*, No. 06-09-00133-CR, 2010 Tex. App. LEXIS 2257 (Tex. App.—Texarkana Mar. 31, 2010, pet. filed); *Ex parte Rich*, 194 S.W.3d 508, 513–14 (Tex. Crim. App. 2006); *Sanders v. State*, 785 S.W.2d 445 (Tex. App.—San Antonio 1990, no pet.). Nelson's situation is notice related, in other words, purely procedural, as contrasted to the other situation, in which there is a substantive defect in the prior conviction.

Nelson failed to preserve this claim for appellate review.[5] Thus, the result reached by the trial court should be affirmed.

There is, however, a small adjustment needed in the judgment. The trial court's amended judgment reads "N/A" in the blanks for pleas to, and findings on, enhancement paragraphs. We

---

[5]*See also Marshall v. State*, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006). The State alleged prior felony convictions, but with citation to Section 12.42(b) of the Texas Penal Code, which would expose Marshall to a first-degree punishment range. TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2009). Other felony convictions were noticed, in a pleading expressing intent to introduce evidence of extraneous acts. TEX. CODE CRIM. PROC. ANN. art. 37.07, § (3)(a), (g) (Vernon Supp. 2009). The Texas Court of Criminal Appeals noted that, in the particular circumstances of that case, Marshall may not have been aware the State was seeking the higher range of punishment provided in Section 12.42(d). "However, when the jury charge was read and it became abundantly clear that the state was asking for enhancement far beyond that specified in its notice to appellant, appellant was bound to object." *Marshall*, 185 S.W.3d at 903.

12

reform the trial court's judgment to indicate that Nelson pled true to the first and second enhancement paragraphs and that both paragraphs were found to be true. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

We affirm the trial court's judgment, as reformed.

Josh R. Morriss, III
Chief Justice

Date Submitted:     May 10, 2010
Date Decided:       June 29, 2010

Do Not Publish

13