**Affirmed and Memorandum Opinion filed January 19, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-10-00904-CR

_____

### JORDASH JEROME HENDERSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 268th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 10-DCR-054132**

## MEMORANDUM OPINION

A jury convicted appellant, Jordash Jerome Henderson, of assault of a public servant. *See* Tex. Penal Code Ann. § 22.01 (West 2011). The jury found the enhancement allegations true and assessed appellant's punishment at 11 years' confinement in the Texas Department of Criminal Justice, Institutional Division. *See id.* § 12.42(a) (West 2011). Appellant challenges his conviction in two issues, arguing that (1) the evidence was insufficient to convict him of assault of a public servant, and (2) the

sentence is grossly disproportionate to the offense and therefore violates the Eighth Amendment. We affirm.

## BACKGROUND

Albert Jimenez ("Jimenez"), the complainant, is a certified peace officer and an employee in the jail division of the Fort Bend County Sheriff's Department. On January 20, 2010, Jimenez was assigned to work in a "control room" in the Fort Bend County Jail.[1] When assigned to the control room, one of Jimenez's duties was managing the "day room" area.[2] At around 10:00 p.m., Jimenez ordered the inmates to return to their assigned cells so that he could close the cell gates. All of the inmates complied with Jimenez's order, except for appellant. Jimenez repeated his order to appellant several times and appellant refused to comply. Jimenez stated that appellant asked him "why" and requested to speak with a supervisor. Jimenez then called for assistance.

Ray Alexander ("Alexander") is a certified peace officer and a deputy with the Fort Bend County Sheriff's Department. Alexander testified that on the day of the incident, he was assigned the duty of "rover" at the jail. As a rover, one of Alexander's duties was to assist the other officers with inmates. After receiving Jimenez's request for assistance, Alexander immediately went to the section of the jail supervised by Jimenez. At that point, Jimenez and Alexander entered the day room where appellant was standing. The other inmates were locked in their assigned cells. Jimenez instructed appellant three times to go to his assigned cell. When appellant again failed to comply, Jimenez testified he called for an available supervisor. Appellant then "lunged" toward Jimenez and bumped his chest.

Alexander testified that after appellant bumped chests with Jimenez, he and Jimenez "took [appellant] to the floor." Alexander testified that when an inmate violates the rule

---

[1] The "control room" is a station separated from the inmates by glass. The gate controls are located in this room.

[2] The "day room" is where the inmates gather to eat and watch television.

2

against physical contact with another, the officer has the "right to … place him on the floor or restrain him." Once on the floor, appellant agreed to go to his cell. Alexander stated that he did not think a supervisor was required by procedure, or that a supervisor was necessary at that time. Jimenez and Alexander restrained appellant by grabbing appellant's arms and holding them behind appellant's back. While restraining appellant, Jimenez and Alexander escorted appellant to his cell. Both Jimenez and Alexander testified that appellant resisted them on the way to the cell. Specifically, Alexander testified that appellant tried to escape from Jimenez's hold. Alexander speculated that appellant was "testing" Jimenez. Alexander testified that at that point, they put appellant "back on the floor."[3]

Once they regained control of appellant, Jimenez and Alexander forced appellant to the back of his cell. They told appellant to remain motionless, facing the wall until they exited the cell. When Alexander and Jimenez released appellant's arms, appellant swung around quickly and struck Jimenez in the face with his fist. Jimenez and Alexander proceeded to grab appellant and put him on the floor in order to regain control of him. Jimenez testified that he called again for a supervisor. Until the supervisor arrived, appellant continued to struggle and disobey orders to stop resisting.

Lynn Duran ("Duran") is a detention supervisor with the Fort Bend County Sheriff's Office. Duran was the supervisor on duty at the time of the incident. Duran testified that when he arrived at appellant's cell, appellant was still struggling with Jimenez and Alexander. Duran stated that Jimenez and Alexander were attempting to place handcuffs on appellant, but appellant was kicking and "being belligerent." Duran said that it was only when he threatened to use his taser on appellant that appellant calmed down and stopped struggling. In accordance with procedure, Jimenez was taken to a local

---

[3] Jimenez testified that after the chest bump, Jimenez and Alexander restrained appellant but that appellant was not "taken to the floor" at this time. Jimenez further testified that the only time they took appellant to the floor was after appellant struck Jimenez in the face.

3

hospital for evaluation. Officers involved in taking Jimenez's statement at the hospital observed the red mark near his left eye; swelling; and other marks on both of his forearms. Though Jimenez described losing his vision momentarily, there was no evidence of any permanent injuries to Jimenez.

Deputy Jorge Astencio ("Astencio") of the Fort Bend County Sheriff's Office testified that on the night of the incident at the jail, he was working in a tower control room. He stated that he was on his way to his sergeant's office when he passed by a section of the jail that holds combatant inmates, among others, in padded cells. He noticed appellant in one of the cells and stopped to ask him what happened. Astencio stated that when he approached appellant, appellant "seemed very upset" and blamed Jimenez and Alexander for his plight. Astencio also testified that appellant threatened to harm Jimenez and Alexander when he was finally placed back in the general population of the jail.

Andre Buzek ("Buzek"), appellant's cousin, testified that during a phone call on May 10, 2010, appellant stated that "he beat up an officer." Buzek stated that he "asked [appellant] because I didn't understand what [appellant] said at first, so I asked him what happened and [appellant] repeated it. [Appellant] said I beat up an officer."

Rodney Rodriguez ("Rodriguez"), a sergeant at the courthouse and an employee of the Fort Bend County Sheriff's Office, was the last witness to testify for the State. Rodriguez testified that on Monday during the previous week, he was leaving the courthouse around lunchtime and saw appellant being a "little belligerent." He stated that appellant was a little angry and using some profane language. He further testified that appellant threatened to "kick [Rodriguez's] fucking ass" several times and that appellant stated he would do it when he returned to court. Additionally, Rodriguez testified that appellant stated he had "already put one of y'all in the hospital." However, Rodriguez admitted he did not know who appellant was referring to when appellant made that statement.

4

The jury found appellant guilty of assault of a public servant. The punishment stage commenced and was also tried to the jury.

At the punishment stage, the State sought to enhance appellant's punishment by proving his status as a previously convicted felon. The State alleged that appellant had a previous felony conviction for sexual assault of a child. Appellant pled true to this enhancement. The State then presented the testimony of Houston Police Officer John Barnes ("Barnes"). Barnes testified that he met appellant in 2008 while investigating a sexual assault of a child case. In that case, a fifteen-year-old boy complained that appellant had sexually assaulted him. Barnes followed up on the complaint and discovered that appellant was living with the boy in an apartment. Barnes further testified that during his investigation of the sexual assault of a child case, he discovered that appellant was a registered sex offender and was not registered at the apartment he leased. Barnes stated that once appellant was arrested, he made a full confession to the crime.

Appellant testified on his own behalf at the punishment stage. He testified that his "behavior wasn't warranted" and that he did not "want to make any excuses." He further testified that Jimenez used "excessive force" against him and that he did not initiate the first physical contact. During cross-examination, the State used appellant's numerous previous criminal convictions to impeach his credibility. The prior convictions brought out during cross-examination included: aggravated sexual assault of a child, failure to comply with sex offender registration requirements, unauthorized use of a motor vehicle, two forgery convictions, fraudulent identification, and sexual assault of a child.

Fred Felcman ("Felcman"), an Assistant District Attorney for Fort Bend County, testified that a week prior to the punishment hearing, he witnessed appellant getting into a jail transport van. He stated that appellant was being "very belligerent" while a bailiff was trying to put him in the van. Felcman testified that appellant used crude language to describe the bailiff, and was "enticing [the bailiff] to come at [appellant] and fight

[appellant].” Felcman stated that once the doors of the van were closed he could hear somebody kicking the door from the inside of the van.

The jury assessed appellant's punishment at eleven years and a fine of $2,500.00.

## INADEQUATE BRIEFING

To present an issue for appellate review, appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Where an appellant fails to present an argument in support of his complaint, fails to address the governing legal principles or apply them to the facts, appellant waives the issue. *Wooten v. State*, 267 S.W.3d 289, 307–08 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *King v. State*, 17 S.W.3d 7, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (finding briefing waiver where appellant's brief cited a single case in support of his argument and failed to address any of the governing legal principles or apply any such principles to the facts of the case).

Appellant presents two issues on appeal. The first is that the evidence is insufficient to support his conviction. The second is that the sentence is grossly disproportionate to the offense and thus violates the prohibition of cruel and unusual punishment. The argument section of appellant's brief consists of a single sentence.[4] The entire brief from the "STATEMENT OF THE CASE" to the "Prayer" totals two pages.[5] In these two pages, only two cases are cited.[6] These two cases detail the standard

---

[4] This sentence is as follows:

> Evidence that is factually insufficient, when the evidence supporting the verdict, considered alone, is too weak to support the finding of guilt beyond a reasonable doubt or when evidence contrary to the verdict is so strong that the standard of beyond a reasonable doubt can not (sic) have been met. Johnson v. State 172 SW3d 6, Brooks v. State 967 Sw 2d 946, 948, 949 (sic)[.]

[5] These two pages include a header that takes up nearly half of the first page, and a signature line that takes up approximately a quarter of the second page.

[6] The List of Authorities contains four cases. The two additional cases cited are: *McKinney v. State*, 207 S.W.3d 366 (Tex. Crim. App. 2006); and *Hall v. State*, 158 S.W.3d 470 (Tex. Crim. App. 2005).

6

of review in a sufficiency challenge, the first issue presented on appeal. While in the Summary of the Argument section appellant details the facts that he believes support his sufficiency challenge, he completely disregards the requirement that he provide citations to the record in support of his arguments. With regard to his second issue, appellant fails to provide this court with citation to even a single case discussing this issue. Instead, appellant merely states that his conviction "violates the Eighth Amendment to the Constitution of the United States in that said conviction is grossly disproportionate for this particular offense." There is only one other sentence in his entire brief discussing his second issue.[7] Appellant has failed to present an argument in support of his complaints, address the governing legal principles or apply them to the facts. *See Wooten*, 267 S.W.3d at 307–08; *King*, 17 S.W.3d at 23; *see also Hicks v. State*, 15 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("[T]o adequately brief a constitutional issue appellant must proffer *specific* arguments and authorities supporting his contentions under the constitution."). We conclude appellant's issues are inadequately briefed and therefore waived. We have nonetheless examined the entire record below in light of the stated issues and determine that they should both be overruled.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant argues that the evidence is legally insufficient to establish that appellant acted with the requisite intent or knowledge because the complainant, Jimenez, "stepped outside the performance of his official duties." Since Jimenez "affirmatively negated the lawful discharge of his duties," appellant contends the evidence is insufficient to uphold his conviction for assault of a public servant. *See* Tex. Penal Code Ann. § 22.01(b).

When reviewing the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could

---

[7] "Whether the Eleven (sic) year sentence is grossly disproportionate for this particular offense and is therefore in violation of the Eighth Amendment of the United states (sic) Constitution."

have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  *Williams v. State*, 255 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict.  *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Direct and circumstantial evidence are treated equally.  *Id*.  If the record supports conflicting inferences, we presume that the trier of fact resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Id.*

A person commits an assault if that person intentionally, knowingly, or recklessly causes bodily injury to another.  Tex. Penal Code Ann. § 22.01(a).  An assault is a third degree felony if it is committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty.  *Id*. § 22.01(b).  Thus, to convict appellant for assault of a public servant, the State had to prove that appellant (1) intentionally, knowingly, or recklessly; (2) caused bodily injury; (3) to a person appellant knew was a public servant; (4) while the public servant was lawfully discharging an official duty.  *See id*. § 22.01; *see also Johnson v. State*, 172 S.W.3d 6, 10–11 (Tex. App.—Austin 2005, pet. ref'd).

"A person acts intentionally, or with intent, with respect to the nature of his conduct … when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (West 2011).  A jury may infer intent from conduct and the surrounding circumstances.  *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim.

8

App. 1991), *overruled on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992). Direct evidence of the elements of the offense is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper*, 214 S.W.3d at 14–15.

The Texas Penal Code provides guidelines for when a correctional officer's use of force is considered lawful. *See* Tex. Penal Code Ann. § 9.53 (West 2011). "Knowing the innate danger in maintaining a correctional facility, the legislature grants correctional officers the right to use reasonable force against an inmate to maintain their own safety, the safety of others, or the security of the prison as a whole." *Hall*, 158 S.W.3d at 475. Section 9.53 of the Penal Code provides:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety of other persons in custody or employed by the correctional facility, or his own safety or security.

Tex. Penal Code Ann. § 9.53. If a correctional officer's use of force falls within this definition, then he is "lawfully discharging his official duties." *See Hall*, 158 S.W.3d at 475.

Here, the jury could reasonably infer intent from appellant's conduct and the surrounding circumstances. *See Clayton*, 235 S.W.3d at 778; *Hernandez*, 819 S.W.2d at 810. The record reflects that appellant refused to obey a clear and direct order to go to his cell, while the remainder of the inmates complied with the order. When Jimenez and Alexander confronted appellant in an attempt to get him to comply, appellant lashed out physically toward Jimenez. Jimenez testified that while escorting appellant to his cell, appellant was "[v]ery aggressive, yelling and using abusive language." Jimenez moved appellant to the back wall of his cell, facing the back wall and instructed him to remain in

9

that position until the officers had exited. At that point, Jimenez released appellant's arms. Immediately upon the release of his arms, appellant turned and threw a punch at Jimenez's face with his closed fist. The jury could conclude from this evidence that it was appellant's conscious objective or desire to cause bodily injury to Jimenez. *See* Tex. Penal Code Ann. §§ 6.03(a), 22.01(a).

Additionally, the jury could find from the testimony of Jimenez, Alexander, and Duran, that Jimenez was lawfully discharging an official duty when appellant struck him. *See* Tex. Penal Code Ann. § 22.01(b); *Wesbrook*, 29 S.W.3d at 111. Both Jimenez and Alexander testified that it is standard procedure to restrain an inmate after a physical altercation with an officer. Both stated that they followed this procedure in restraining appellant after appellant bumped chests with Jimenez. Duran testified that when an inmate refuses to comply with an order to go to his cell, the protocol is to physically escort that inmate to his cell. Jimenez and Alexander also testified that it was standard procedure to escort an uncooperative inmate into his cell, place him at the back of the cell facing the wall, and instruct him not to move. Both testified that this procedure was followed in taking appellant to his cell. Further, Jimenez and Alexander testified that the procedures followed are in place to maintain a safe environment for both the officers and the inmates. There is no evidence within the record that Jimenez either departed from his duties or was criminally or tortiously abusing his status as a public servant at the time of the assault. *See Hall*, 158 S.W.3d at 475. The jury could conclude from this evidence that Jimenez was lawfully discharging an official duty when appellant struck him. *See id.*; Tex. Penal Code Ann. § 9.53.

Examining all of the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See* Jackson, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895; *Pomier*, 326 S.W.3d at 378.

We overrule appellant's first issue.

10

## PROPORTIONALITY OF THE SENTENCE

In his second issue, appellant argues that the sentence is grossly disproportionate to the offense committed and thus violates the Eighth Amendment. *See* U.S. CONST. amend VIII.

Almost every right, constitutional or statutory, may be waived by failing to object. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). Specifically, an objection based on cruel and unusual punishment must be made in the trial court or it is waived on appeal. *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); *see also Battle v. State*, 348 S.W.3d 29, 30–31 (Tex. App.—Houston [14th Dist.] 2011, no pet.). After announcing the eleven-year sentence, the trial court asked if appellant had anything to say. Appellant made no objection to the sentence imposed and instead responded "[n]o, Your Honor." Moreover, appellant did not file a motion for new trial objecting to his sentence. Appellant failed to preserve his complaint for appellate review. *See Curry*, 910 S.W.2d at 497; *Battle*, S.W.3d at 31.

Despite having failed to preserve error, appellant contends that his sentence is grossly disproportionate to the crime when compared to the gravity of the offense. Criminal sentences must be proportionate to the crime and even a sentence within the statutorily prescribed range may violate the Eighth Amendment. *See Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *Baldridge v. State*, 77 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The principle is rarely applied to invalidate a sentence for a term of years. *See Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).

In conducting an Eighth Amendment proportionality analysis, we first make a threshold comparison of the gravity of the offense against the severity of the sentence. *Harris v. State*, 204 S.W.3d 19, 29 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Baldridge*, 77 S.W.3d at 893; *see also Harmelin v. Michigan*, 501 U.S. 957, 1004–06, 111

S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., plurality op.). Only upon determining that the sentence is grossly disproportionate to this particular crime do we then consider: (a) the sentences for similar crimes in the same jurisdiction; and (b) the sentences for the same crime in other jurisdictions. *Baldridge*, 77 S.W.3d at 893; *see also Harmelin*, 501 U.S. at 1005.

Even if appellant had preserved error, we cannot conclude that his sentence is disproportionate to the offense charged. First, we must compare the gravity of this offense against the severity of the sentence. *See Harris*, 204 S.W.3d at 29. Generally, punishment assessed within the statutory limits is not considered cruel and unusual punishment. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *see also Baldridge*, 77 S.W.3d at 893–94 ("It has long been recognized that if the punishment assessed is within the range of punishment established by the Legislature under its constitutional authority, there is no violation of the state constitutional provisions against cruel and unusual punishment.").

Appellant's conduct in committing an assault of a public servant is a third degree felony and punishable by two to ten years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.34, 22.01 (West 2011). However, appellant's offense was not based upon this conduct alone. Appellant's sentence was based upon his status as a repeat felony offender. *See id*. § 12.42. He pled "true" to the felony enhancement paragraph, elevating the range of punishment to two to twenty years and a fine not to exceed $10,000. *See id*. §§ 12.33, 12.42, 22.01, 22.011(a)(2) (West 2011). "Under a recidivist statute, a sentence is 'based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.'" *Hicks v. State*, 15 S.W.3d 626, 632 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (quoting *Rummel v. Estelle*, 445 U.S. 263, 284, 100 S. Ct. 1133, 1144, 63 L. Ed. 2d 382 (1980)); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). In applying a recidivist statute, the State is not required to treat a defendant as if an offense

12

was his first. *Hicks*, 15 S.W.3d at 632 (citing *Rummel*, 445 U.S. at 284, 100 S. Ct. at 1144). Instead, the State is entitled to place upon the defendant "the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Rummel*, 445 U.S. at 284, 100 S. Ct. at 1144; *Hicks*, 15 S.W.3d at 632.

Considering this particular offense, evidence showed that appellant violated a direct order from a correctional officer—an order the remainder of the inmates followed without incident. Additionally, there is evidence that appellant lashed out physically at Jimenez twice during this altercation, causing bodily injury to that officer and breaking specific rules against touching an officer. Ultimately, it was only when appellant was threatened with a taser that appellant stopped resisting the officers and complied with their orders. Even after appellant was placed in a padded cell, he was still threatening to harm both Jimenez and Alexander. Evidence presented also indicated that appellant told his cousin that he "beat up" an officer, and told another officer that he had "already put one of y'all in the hospital."

The State enhanced appellant's punishment range by proving that appellant was previously convicted of a felony offense. *See Rummel*, 445 U.S. at 284, 100 S. Ct. at 1144; *Hicks*, 15 S.W.3d at 632. Appellant was sentenced to eleven years—only one year above the maximum penalty he could have received if his punishment had not been enhanced by the prior felony conviction. *See* Tex. Penal Code Ann. §§ 12.33, 12.34. This sentence falls well within the statutory limits. *See* Tex. Penal Code Ann. §§ 12.33, 12.42.

Given the gravity of appellant's crime, we cannot conclude that his sentence is grossly disproportionate to this particular offense.[8] Under these circumstances, we

---

[8] In similar situations, other defendants have been punished severely. *See Hall*, 158 S.W.3d at 471 (defendant sentenced to ninety-nine years for assaulting a correctional officer by punching him in the face with such force it knocked the officer to the ground, at which point other inmates joined in the assault on the officer resulting in a number of serious injuries); *Hills v. State*, No. 03-09-00166-CR, 2010 WL 2330310 (Tex. App.—Austin June 11, 2010, pet. dism'd) (mem. op., not designated for

conclude that the sentence imposed in this case does not run afoul of the federal prohibition against cruel or unusual punishment.

We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


                                    /s/    Sharon McCally
                                           Justice


Panel consists of Chief Justice Hedges and Justices Christopher and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

publication) (defendant sentenced to eight years for punching correctional officer in the chest); *Lee v. State*, No. 13-09-00550-CR, 2010 WL 1919504 (Tex. App.—Corpus Christi May 13, 2010, no pet.) (mem. op., not designated for publication) (defendant sentenced to twenty-five years for punching a correctional officer as many as three times); *see also Harris*, 204 S.W.3d at 29 (upholding sentence of twenty-five years for DWI conviction where no person or property was harmed but sentenced was enhanced by five prior DWI convictions—two of which were felonies).