

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00176-CR

Dan William **REYNOLDS** III,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B12185
Honorable M. Rex Emerson, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:          Catherine Stone, Chief Justice
                 Marialyn Barnard, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  April 2, 2014

AFFIRMED

Appellant Dan William Reynolds III entered open pleas of guilty to eighty counts of child pornography, which were alleged in a single indictment, and elected to have the trial court assess punishment. The trial court sentenced Reynolds to ten years confinement on each count. The trial court ordered all but eight counts to run concurrently. As to the remaining eight counts, the trial court ordered those sentences to run consecutively. Thus, Reynolds was sentenced to a total of eighty years confinement. On appeal, Reynolds contends his sentences violate the Eighth

Amendment's prohibition against cruel and unusual punishment. We affirm the trial court's judgment.

## BACKGROUND

Given the pleas of guilty and the issue raised in this appeal, a rendition of the underlying facts is unnecessary to our disposition. Accordingly, we only provide the background relevant to punishment.

As noted in the introduction, Reynolds, without a plea agreement, pled guilty to eighty counts of child pornography. Reynolds elected to have the trial court assess punishment. Before he entered his pleas, the trial court admonished Reynolds regarding his rights and the potential sentences. The trial court specifically asked Reynolds if he knew he had been charged with eighty counts of child pornography and that each count is a third degree felony with a punishment range of two to ten years. Reynolds stated that he understood. Thereafter, Reynolds's trial counsel asked him if he understood "that it's conceivable that the Court, when he sentences you, could make them run one after the other, consecutively." Reynolds stated in response, "I understand." The court then asked if he still wished to proceed and Reynolds acknowledged that he did. Accepting the pleas, the trial court found Reynolds guilty, ordered preparation of a pre-sentence investigation report ("PSI"), and set a date for the punishment phase of the trial.

At the punishment hearing, the State called Alaina Flores, the probation officer who prepared the court-ordered PSI. Ms. Flores stated that in order to prepare a PSI, she: interviews the defendant, collects relevant information from different resources, and reviews the offense report. The PSI was admitted into evidence without objection. Ms. Flores testified she interviewed Reynolds, who was cooperative. She stated he admitted his crimes and accepted responsibility for them — he was embarrassed and regretted his actions. However, Reynolds told her the minor victims initiated the sexual conversations. Reynolds, when asked if he had requested that the

minors send him pornographic pictures, stated he did not believe the pictures he received were pornographic. Reynolds stated that on the Internet he pretended to be something other than a fifty–year–old man because he knew the minors would not engage with him if he told the truth. He also denied ever meeting any of his victims. Reynolds also told Ms. Flores that he had been a camp counselor, a camp director, and was the youth minister for a year at his church.

After Ms. Flores testified, the State rested and Reynolds called Dr. Matthew Ferrara, a licensed psychologist and sex offender treatment provider. Dr. Ferrara testified that at the request of Reynolds's counsel, he conducted a risk assessment of Reynolds to determine whether he was at risk of reoffending. Dr. Ferrara described his methodology, which he stated was the same methodology used by probation officers, parole officers, and others who conduct such assessments.

Dr. Ferrara testified that based on his risk assessment, which included meeting with Reynolds, Reynolds posed a very low risk of reoffending. Dr. Ferrara also testified Reynolds's prognosis for successfully completing treatment was good. In determining his prognosis, Dr. Ferrara used two interview factors and one objective test. The two interview factors were accountability and empathy. Dr. Ferrara stated that for the accountability factor, Reynolds demonstrated accountability for his actions, claiming he knew what he did was wrong. With regard to the empathy factor, Reynolds realized he had hurt numerous people, including his wife and family. The result of the objective test indicated Reynolds was motivated for treatment. Dr. Ferrara ultimately concluded Reynolds was at low risk for any kind of future sexual or non-sexual misconduct and that he could successfully be placed on probation.

During its cross-examination of Dr. Ferrara, the State pointed out that Reynolds had over 12,000 "kiddie porn pictures." He also had hidden post office boxes and hidden computers. He purchased digital equipment. The address of the middle school attended by one of his victims was found among his possessions. This was a victim for which Reynolds kept over 1,000 pornographic

images. In addition, Reynolds admittedly made three trips to Arkansas, where this victim lived, although Reynolds and the victim denied they ever met.

Reynolds admitted that only seventy-five percent of the images he had were downloaded from the computer — the others apparently coming directly from the children — and he had a hidden cache of stuffed animals and clothing that would appeal to children. The State asked if these things made Reynolds more dangerous than someone who simply looks at child pornography on the Internet. Dr. Ferrara admitted Reynolds could potentially be more dangerous. The doctor stated he "would have to do a little bit more digging . . . ."

The trial court then asked counsel if they would object if he asked Dr. Ferrara a question. Neither objected. The trial court asked if the doctor took into account that Reynolds's wife had caught Reynolds with child pornography six years earlier and that he claimed to have quit, but then began viewing it again. Dr. Ferrara stated that when a family member catches such a person, the person will "lie their way out of it." However, being caught by law enforcement usually "puts the stop on them."

After considering the evidence, the trial court sentenced Reynolds to ten years imprisonment on each of the eighty counts, but ordered eight of the counts to run consecutively. This resulted in Reynolds receiving a total of eighty years confinement.

### ANALYSIS

As noted above, Reynolds raises a single issue on appeal in which he challenges the sentences imposed. Specifically, he contends his "sentences violate the Eighth Amendment's prohibition against cruel and unusual punishment because [his] sentences are grossly disproportionate to the offenses."

*Waiver*

Before we analyze Reynolds's issue substantively, we must determine whether he has preserved his complaint for our review. The State contends Reynolds has failed to preserve error because the complaint raised in his motion for new trial, and now on appeal, is based on Reynolds's apparent belief that he received a single eighty year sentence, when in fact, his true complaint should be that the trial court erred in ordering eight of the sentences to run consecutively. The State contends that because Reynolds never complained the trial court erred in ordering his sentences to run consecutively — instead asserting his sentences are grossly disproportionate to his crime — he failed to preserve error. We disagree with the State's contention. We find no reason to disallow review of Reynolds's complaint.

To preserve a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a motion stating the specific grounds for the ruling desired. *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Here, Reynolds raised the issue of proportionality in his motion for new trial, which is the argument he raises on appeal. We find that the lengthy sentence was a result of cumulation to be irrelevant with regard to preservation of this issue. Thus, we hold Reynolds preserved his challenge for our review. *See id.*

*Disproportionality*

Sentences that fall within the statutory limits are generally not considered excessive under the Eighth Amendment. *Smith v. State*, 256 S.W.3d 341, 343–44 (Tex. App.—San Antonio 2007, no pet.); *see Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973) (holding that sentence falling within range prescribed by legislature was not excessive or cruel and unusual); *Darden v. State*, 430 S.W.2d 494, 496 (Tex. Crim. App. 1968) ("If the punishment is within that prescribed by the statute, it is beyond the province of this Court to pass upon the question of excessive

punishment"). Here, Reynolds received a ten year sentence for each count of possession of child pornography. Each count was a third degree felony, and thus each sentence was within the two to ten year range allowed by section 12.34(a) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.34 (West 2011); *see also* TEX. PENAL CODE ANN. § 43.26(a), (d) (defining possession of child pornography and stating it is third degree felony) (West Supp. 2013). Additionally, under the Texas Penal Code, the trial court was permitted to order the sentences to run consecutively. *See* TEX. PENAL CODE ANN. § 3.03 (West Supp. 2013). Accordingly, as a general rule, neither the imposition of ten years on each count nor the cumulation resulted in an excessive sentence. However, there is an exception to the rule that sentences within the range of punishment are not excessive in violation of the Eighth Amendment, and that is when the sentences are grossly disproportionate to the offenses for which the defendant has been convicted. *See Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006); *Smith*, 256 S.W.3d at 344.

In determining whether a sentence is grossly disproportionate, the United States Supreme Court set forth three objective factors to guide appellate review in Eighth Amendment cases: (i) "the gravity of the offense and the harshness of the penalty"; (ii) "the sentences imposed on other criminals in the same jurisdiction"; and (iii) "the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292 (1983). However, the Court's opinion in *Harmelin v. Michigan* raised questions about the viability of the *Solem* three-part test. 501 U.S. 957, 962–63 (1991). Justice Scalia, who was joined by the Chief Justice Rehnquist, wrote, "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Harmelin*, 501 U.S. at 965 (Scalia, J., plurality op.). Justice Kennedy and two other justices disagreed, recognizing a narrow proportionality principle and clarifying the *Solem* three-factor analysis. *Id.* at 995–1010 (Kennedy, J., plurality op.). Based upon the opinions by Justice Scalia

and Justice Kennedy, a majority voted to affirm the life without parole sentence assessed against a defendant who possessed 672 grams of cocaine. *Harmelin*, 501 U.S. at 995–97.

In *McGruder v. Puckett*, the Fifth Circuit was called upon to consider whether a disproportionality argument survived the Court's decision in *Harmelin*. 954 F.2d 313 (5th Cir.), *cert. denied,* 506 U.S. 849 (1992). In holding that it did, the Fifth Circuit stated:

> By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem,* and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not. Only Justice Kennedy's opinion reflects that view. It is to his opinion, therefore, that we turn for direction. Accordingly, we will initially make a threshold comparison of the gravity of [the defendant's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then consider the remaining factors of the *Solem* test and compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*Id.* at 316.

Like the Fifth Circuit, this court has recognized the survival of disproportionality. *See Smith*, 256 S.W.3d at 344; *see also Lackey v. State*, 881 S.W.2d 418, 421 (Tex. App.—Dallas 1994, pet. ref'd). We have also recognized that *Solem*, in its original form, did not survive. *Smith*, 256 S.W.3d at 344; *see also Lackey*, 881 S.W.2d at 421. We agreed with the Fifth Circuit that we must first review a sentence to determine whether it is grossly disproportionate to the crime. *Id.* Only if we determine that the sentence is grossly disproportionate to the offense will we consider the remaining two *Solem* factors. *Id.* As we discuss below, Reynolds's sentences are not grossly disproportionate to his crimes, and therefore we do not decide what role, if any, the remaining *Solem* factors have on his disproportionality claim.

At the punishment hearing, the evidence established Reynolds had over 12,000 "kiddie porn pictures" and had Internet contact with certain victims. Reynolds admitted only seventy-five

percent of the images he possessed were downloaded from the computer — the others apparently came from children he contacted through the Internet. Having been caught with child pornography six years earlier by his wife, Reynolds did not stop viewing or collecting child pornography, despite his promise to do so. Rather, he became more secretive, more careful. He also had hidden post office boxes and hidden computers. Moreover, he purchased digital equipment to enhance his ability to commit the offenses.

The address of the Arkansas middle school attended by one of his victims was found among Reynolds's possessions. This was a victim for which Reynolds kept over 1,000 pornographic images. Although Reynolds and this victim denied they ever met face–to–face, the victim sent Reynolds a teddy bear, and he admittedly travelled to Arkansas at least three times while he was communicating with the victim. Reynolds also had a hidden cache of stuffed animals and clothing that would appeal to children. The State asked Reynolds's expert if possession of these items and other behaviors exhibited by Reynolds made Reynolds more dangerous than someone who simply looks at child pornography on the Internet. Dr. Ferrara admitted that he could potentially be more dangerous.

The evidence also showed Reynolds told Flores that the minor victims initiated the sexual conversations — seemingly shifting the blame to his victims. Reynolds, when asked if he had requested that the minors send him pornographic pictures, stated he did not believe the pictures he received were pornographic. Reynolds stated that on the Internet he pretended to be something other than a fifty-year-old man because he knew the minors would not engage with him if he told the truth. Reynolds had also intentionally placed himself near children, serving as a camp counselor, a camp director, and as a youth minister for a year at his church.

The trial court clearly considered the evidence before it decided to cumulate the sentences:

> Mr. Reynolds, let me tell you first off, I appreciate the fact that you accept responsibility, okay.
>
> Now, that being said, I have a little bit of a hard time with that because in the process of the report with Dr. Ferrara and the PSI, although you consistently accept responsibility, you kind of deflect the blame. It's like you're running around with this little protective shield up. So I'm somewhat conflicted on that.
>
> Given the extensive nature of the plan and the implementation, given the fact you've been doing this for quite some time. You were caught, and started doing it again. You just worked more secretively than you did the first time, and most significantly the fact that you actually had personal contact with some of the victims, and you encouraged them to participate in this activity. All those factors are coming into play.

The trial court concluded that given the evidence, it believed the sentence was "fair and just."[1] We agree.

Having considered the evidence, we cannot say the trial court's decision to sentence Reynolds to ten years confinement on each count, and to cumulate eight of the eighty counts, was disproportionate to Reynolds's conduct. *See Smith*, 256 S.W.3d at 344. Therefore, we need not address the remaining *Solem* factors. *Id.*

### CONCLUSION

Based on the foregoing, we overrule Reynolds's sole issue and affirm the trial court's judgment.

Marialyn Barnard, Justice

Publish

---

[1] Though not specifically relevant to our disproportionality analysis, we note, as we did above, that before accepting Reynolds's pleas, the trial court specifically asked Reynolds if he knew the punishment range for each of the eighty counts was between two and ten years. Reynolds stated that he understood. Then, Reynolds's attorney specifically advised Reynolds that the court had the authority to order his sentences to run consecutively, "run one after the other." Reynolds again stated he understood. The court then asked if Reynolds still wished to proceed, which he did. Thus, Reynolds was fully aware that he could have been sentenced to as much as 800 years in prison.