

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00243-CR

TAMARA LYNNE STUER                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR12664

----------

## MEMORANDUM OPINION[1]

----------

In one issue, appellant Tamara Lynne Stuer appeals her twenty-four-month sentence for delivering less than a gram of methamphetamine. She contends that the sentence is grossly disproportionate to the offense and asks us to remand this case for a new trial on her punishment. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

In late November 2012, William Watt, a narcotics investigator with the Hood County Sheriff's Office, learned that appellant was selling methamphetamine and persuaded a confidential informant to buy drugs from her. The confidential informant called appellant by phone and told her that another man wanted to buy a "teener"—roughly 1.75 grams of methamphetamine—from her. Appellant agreed to sell methamphetamine for $100.

The confidential informant drove with Officer Watt to appellant's house. Appellant met the men at their car and gave them a metal box. The box contained small baggies with methamphetamine. Officer Watt weighed the methamphetamine and gave appellant five $20 bills.[2]

A grand jury indicted appellant for delivering less than a gram of methamphetamine, which is a state-jail felony that carries a sentencing range of confinement for 180 days to two years.[3] The indictment included a paragraph alleging that appellant had been previously convicted of another drug-related

---

[2]Without packaging, the total weight of the methamphetamine was less than a gram.

[3]*See* Tex. Health & Safety Code Ann. § 481.112(a)–(b) (West 2010); Tex. Penal Code Ann. § 12.35(a) (West Supp. 2014). When she entered her plea, appellant expressed her understanding that she could receive up to two years' confinement.

felony. In front of a jury, appellant pled guilty, and the trial court therefore conducted a unitary trial on her punishment.[4]

During the trial on punishment, the jury learned that appellant had previous convictions for possessing less than a gram of methamphetamine (for which she received 20 months' confinement) and for possessing less than two ounces of marijuana (for which she received 132 days' confinement). For each of those prior offenses, appellant had been placed on deferred-adjudication community supervision but had been convicted after violating conditions of the community supervision by possessing or using drugs or possessing drug paraphernalia.

Appellant testified that she had failed to complete community supervision conditions for her prior offenses because she was homeless and did not have transportation to attend required appointments. She also stated that she had been addicted to drugs in the past (beginning in approximately 2000) and had sold them but that she had stayed out of legal trouble from her latest release from confinement in November 2010 until November 2012.

But appellant testified that in November 2012, her oldest daughter, who was in the Army, was killed after crashing her car. Appellant went out of town for a cremation service, and when she returned, she discovered that her house had been burglarized and that only her clothes remained there. Having nowhere else to go, appellant reunited with her abusive ex-boyfriend, which was "one of the

---

[4]*See State v. Davis*, 349 S.W.3d 535, 538 (Tex. Crim. App. 2011).

3

biggest mistakes that [she] ever made." Appellant indicated that staying with her ex-boyfriend led her into using and selling drugs again. She testified that when the confidential informant called her, she initially told him that she did not want to sell drugs any more, but she eventually agreed to do so because she was hungry and desperate for money.

After her arrest, appellant asked the police whether she could become a confidential informant to avoid prosecution for selling methamphetamine. The police agreed to that arrangement, but appellant could not complete it quickly enough for the police because she decided to help her sister, who was a long-time heroin addict and had "[fallen] off the wagon." The police rearrested appellant after believing that she had been "hiding."

Appellant testified that upon the resolution of her charge, she could live with a friend, Trina Parish,[5] while she made enough money to move to Nevada and get away from negative influences in Hood County. She explained that after her arrest, she had completed a faith-based drug-recovery program, and that she was continuing to receive treatment at the time of trial. Appellant testified that the drug-recovery program had also helped her cope with the death of her daughter. Finally, she testified that she desired to help open a halfway house in Granbury, which she believed lacked "any place for people to go to when they get out of jail or get out of prison."

---

[5]Parish testified that appellant could live with her until appellant could "get up on her feet."

4

In appellant's closing argument, she asserted that she "want[ed] a different life" and asked the jury to assess her punishment at ten months' confinement (which she had already served while awaiting trial). The jury found appellant guilty and assessed her punishment at two years' confinement along with a $1,500 fine. The trial court sentenced her in accordance with the jury's verdict.

Appellant filed a motion for new trial, arguing that her punishment is "contrary to the law and the evidence." At the hearing on her motion, appellant contended, without presenting evidence and without elaboration, that her punishment was "excessive." The trial court denied the motion for new trial. Appellant brought this appeal.

## Alleged Gross Disproportionality

Appellant contends that under federal and state law,[6] her punishment of two years' confinement—the maximum for the state-jail felony that she committed—is excessive and illegal. She raised this argument for the first time in her motion for new trial. We review a trial court's denial of a motion for new trial

---

[6]Appellant did not cite legal authority in the trial court to support her claim that her sentence is excessive. On appeal, she cites the Eighth Amendment along with a state constitutional and statutory provision, all of which prohibit the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13; Tex. Code Crim. Proc. Ann. art. 1.09 (West 2005). Appellant does not explicitly argue that we should analyze her federal and state contentions on cruel and unusual punishment separately, so we will consider them together. *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App.) (declining to interpret the language of our state constitution's prohibition of inflicting cruel or unusual punishment as more expansive than the federal constitution's similar provision), *cert. denied*, 522 U.S. 994 (1997).

5

for an abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support its ruling. *Id.*; *Adetomiwa v. State*, 421 S.W.3d 922, 927–29 (Tex. App.—Fort Worth 2014, no pet.) (applying the abuse of discretion standard to an appellant's complaint about the length of his sentences).

The factfinder's discretion to impose any punishment within a prescribed statutory range is essentially "unfettered." *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). Subject only to an "exceedingly rare" and "somewhat amorphous" gross-disproportionality review required by the Eighth Amendment, a punishment that falls within the legislatively-prescribed range and that is based upon the factfinder's informed normative judgment is unassailable on appeal. *Id.* at 323–24; *Adetomiwa*, 421 S.W.3d at 928; *see Lawrence v. State*, 420 S.W.3d 329, 333 (Tex. App.—Fort Worth 2014, pet. ref'd) ("Generally, punishment assessed within the permitted statutory range is not subject to a challenge for excessiveness."); *Sample v. State*, 405 S.W.3d 295, 304 (Tex. App.—Fort Worth 2013, pet. ref'd) (stating the same).

When deciding whether an exceptional sentence might be grossly disproportionate to an offense committed, we compare the gravity of the offense

committed with the severity of the sentence.[7] *Lawrence*, 420 S.W.3d at 333; *see also Alvarez v. State*, 63 S.W.3d 578, 581 (Tex. App.—Fort Worth 2001, no pet.) ("We judge the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender."). We also consider the likely impact of the defendant's criminal history on the factfinder's punishment decision. *Sample*, 405 S.W.3d at 304–05; *Culton v. State*, 95 S.W.3d 401, 403–04 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Appellant emphasizes that her offense was not violent and did not cause a discernible physical injury to anyone. But Texas law classifies the distribution of illegal drugs as a grave harm to society; we have stated that possession, use, and distribution of illegal drugs are among "the greatest problems affecting the health and welfare of our population." *Acosta v. State*, 160 S.W.3d 204, 212 (Tex. App.—Fort Worth 2005, no pet.) (quoting *Thomas v. State*, 916 S.W.2d 578, 583 (Tex. App.—San Antonio 1996, no pet.)); *see also Puga v. State*, 916 S.W.2d 547, 550 (Tex. App.—San Antonio 1996, no pet.) (linking illegal drugs and crimes of violence); *Robinson v. State*, 906 S.W.2d 534, 537 (Tex. App.—Tyler 1995, no pet.) ("Frequently, drug activity is also the contributing factor of

---

[7]If we conclude that the record raises an inference that a sentence may be grossly disproportionate to an offense, we then compare the sentence to sentences for similar crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions. *Reynolds v. State*, 430 S.W.3d 467, 472 (Tex. App.—San Antonio 2014, no pet.); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.). Because we conclude that appellant's sentence is not grossly disproportionate to her crime, we need not compare her sentence with other sentences.

the 'necessary' commission of other crimes by the individual to support a habit. Our entire society is negatively affected by criminal drug activities.").

Moreover, appellant recognizes that a "state may punish a recidivist more harshly than a first offender." The evidence established appellant's long-standing history of using and delivering illegal drugs, dating back to 2000. Although she received leniency with respect to her two prior drug offenses through deferred adjudication of her guilt and her placement on community supervision, she abused that leniency by, according to documents from those cases, continuing to engage in illegal drug activities. With respect to each of those prior offenses, therefore, her community supervision was revoked, and she was convicted and sentenced.

Nonetheless, she committed the current offense by selling methamphetamine. The jury (and later, the trial court in ruling on appellant's motion for new trial) could have therefore reasonably rejected appellant's claim that she was ready for (or would be able to achieve) a "different life." The jury could have rationally determined that a short sentence would not be sufficiently penalizing, deterring, or reforming given that appellant's 2009 twenty-month sentence for possession of less than a gram of methamphetamine did not prevent her commission of another drug offense.

Considering all of these facts and the remaining evidence in the record, we hold that the trial court did not abuse its discretion by denying appellant's motion for new trial and by implicitly concluding that her punishment was not grossly

8

disproportionate to her offense.  *See Adetomiwa*, 421 S.W.3d at 927.  We overrule appellant's only issue.

## Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 26, 2015