**AFFIRM; and Opinion Filed October 6, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00884-CR

**RACHEAL MEACHELL MATHEWS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-82553-2013**

## MEMORANDUM OPINION

Before Justices Fillmore, Stoddart, and Richter[1]
Opinion by Justice Fillmore

Racheal Meachell Mathews pleaded guilty to the offense of injury to a child without the benefit of an agreement as to punishment. The trial court found Mathews guilty and sentenced her to eight years' imprisonment. In two issues, Mathews contends the sentence violates the United States and Texas Constitutions. We affirm the trial court's judgment.

### Background

On June 3, 2013, Mathews's ten-year-old daughter D.B. knocked on the door of a neighbor's apartment. D.B. was nude and asked if she could come inside because her mother had been beating her. D.B. had bruises on her face and "huge welts" from her neck to her thighs. According to the neighbor and the responding police officer, D.B. said Mathews told her to take

---

[1] The Hon. Martin Richter, Justice, Assigned.

her clothes off, tied her hands and feet, placed duct tape over her mouth and eyes, and beat her with a belt. D.B. also told the neighbor and the police officer that Mathews hit her in the face and choked her.[2] D.B. appeared very frightened that her mother would find her and begged the neighbor to close the blinds and lock the door to the apartment.

Mathews confirmed to the police that she had "whipped" or "spanked" D.B. After Mathews was arrested, she was asked whether she would authorize D.B.'s release to Mathews's mother; Mathews initially said "yes," but then stated D.B. should be placed into foster care, because being released to Mathews's mother would be "too good" for her if Mathews was going to jail. D.B. was placed into foster care.

Mathews pleaded guilty to the offense of injury to a child, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.04(a)(3), (f) (West Supp. 2014). During the punishment hearing, the State presented evidence of the severity of D.B.'s injuries and that D.B. was very afraid of Mathews. Mathews testified that, beginning in December 2012, D.B. had become disrespectful, was telling lies, had defecated in the closet, was smoking cigarettes, and "began to hang out with the wrong crowd." Mathews had spanked D.B. on occasion due to her behavior. On June 3, 2013, which was D.B.'s birthday, D.B. asked Mathews "what part of your neck do you have to cut for you to die." Mathews did not know whether D.B. was suicidal or was threatening her. The question, and D.B.'s refusal to explain why she wanted the information, made Mathews angry. Mathews hit D.B. with her hand and then decided to give D.B. a spanking with a belt.

Mathews admitted she told D.B. to take her clothes off and lie on the bed.[3] She denied she tied D.B.'s hands and feet or placed duct tape over D.B.'s eyes and mouth, but admitted the

---

[2] D.B. did not testify at trial.

[3] Mathews testified there was "no reason in particular" that she told D.B. to remove her clothes. However, Mathews's therapist testified, presumably based on information received from Mathews, that Mathews required D.B. to remove her clothes because D.B. had ran away after previous spankings. Further, the Family Service Plan completed by Child Protective Services, offered into evidence by Mathews, states Mathews told the social worker that "she tied [D.B.'s] hangs [sic] together and made her take of[sic] her clothes so that she did not run off."

police found a ball of used duct tape in the trash can in her bathroom.[4]  Mathews admitted she hit D.B. with a leather belt between forty and sixty times.  She testified D.B. began fighting back after the first four or five blows, causing the belt to strike all over D.B.'s body.  Mathews admitted she lost control while hitting D.B. with the belt.  Mathews stopped hitting D.B. with the belt when her mother called.  D.B. then ran out of the apartment without putting on any clothes.  Mathews admitted she initially blamed D.B. for the incident, but testified she did not realize the severity of D.B.'s injuries until approximately four months after the incident, when she was shown the pictures that were taken of D.B. on the date of the beating.

In addition to the criminal charges, a civil case was initiated regarding Mathews's parental rights to D.B.  Mathews was ordered to participate in certain services and was ordered not to contact D.B.  Mathews did not successfully complete all court-ordered services in that case.  In March 2014, Mathews agreed to terminate her parental rights to D.B. and to allow her mother to have full custody of D.B.

In March or April of 2014, after she had agreed to terminate her parental rights but shortly before a scheduled jury trial on the criminal charges, Mathews began volunteering at the school D.B. was attending for the purpose of seeing D.B.  Mathews was held in contempt of court for her violation of the court order that she not contact D.B. and sentenced to six days in jail.  Mathews admitted she promised to buy D.B. shoes, an iPhone, and an iPad during their contact at the school, but claimed D.B. asked for those items.  Mathews testified she wanted D.B. to have a last memory of her mother other than the beating.

Mathews presented evidence that she was under stress on the day of the incident because she was struggling with working, attending school, and trying to take care of D.B. and due to

---

[4] The record reflects this ball of duct tape consisted of eight pieces that were each six to eight inches long.  Some of the recovered strips of duct tape had human hair on them.

D.B.'s behavior. Mathews did not have a strong support system in Dallas and had not told her mother, who lived in Louisiana with other members of Mathews's family, about the difficulties she was having in Dallas.

Through her mother, her counselor, and a former co-worker, Mathews offered evidence that she would not benefit from being sent to prison, was not dangerous, and was capable of being a productive citizen. According to Mathews's counselor, the termination of Mathews's parental rights to D.B. was a sufficient punishment. Mathews's counselor also testified that, although initially Mathews blamed D.B. for the incident, she was now taking responsibility for her actions.

The trial court reviewed letters of support for Mathews, but indicated those letters were not evidence. Without hearing closing argument, the trial court sentenced Mathews to eight years' imprisonment. Mathews filed a motion for new trial on grounds the "verdict/punishment is contrary to the law and the evidence and is excessive." The record does not reflect the motion for new trial was presented to the trial court or that a hearing was held on the motion.

**Analysis**

In her first issue, Mathews argues the sentence was disproportionate to the offense charged, and "is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Constitution of the State of Texas." *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); TEX. CONST. art. I, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."). To preserve these complaints for review, Mathews was required to object at trial on the same ground she raises on appeal and obtain a ruling. *See* TEX. R. APP. P. 33.1(a); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (appellant did not preserve complaint that death sentence was cruel and

–4–

unusual punishment because appellant did not object at trial on this basis); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (appellant waived complaint that sentence violated right under Texas constitution against cruel and unusual punishment by failing to make objection in trial court); *Casteneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.) (concluding that by failing to object, appellant did not preserve argument that sentence was grossly disproportionate to offense). Mathews did not complain about the sentence at the time it was imposed. Although she raised the issue of excessive punishment in her motion for new trial, the record does not reflect she presented the motion for new trial to the trial court. *See* TEX. R. APP. P. 21.6 (requiring defendant in criminal case to present motion for new trial to trial court within ten days of filing it); *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009) (merely filing motion for new trial is insufficient alone to show presentment). By failing to comply with the presentment requirement of rule 21.6, Mathews failed to preserve the issue for our review. *See Carranza v. State*, 960 S.W.2d 76, 79–80 (Tex. Crim. App. 1998) (interpreting predecessor rule, which is identical to rule 21.6); *Richardson v. State*, 328 S.W.3d 61, 72 (Tex. App.—Fort Worth 2010, pet. ref'd) (per curiam) (disproportionate-sentence complaint not preserved when record showed no presentment of motion for new trial to trial court and no ruling by trial court).

Even if Mathews had preserved this issue, she has not shown that her sentence was cruel and unusual or grossly disproportionate to the offense for which she was convicted. Injury to a child is a third-degree felony punishable by any term of imprisonment not more than ten years nor less than two years. *See* TEX. PENAL CODE ANN. §§ 12.34(a) (West 2011); 22.04(a)(3), (f). Mathew's eight-year sentence falls within the statutory punishment range. Generally, punishment that is assessed within the statutory range for an offense is neither excessive nor unconstitutionally cruel or unusual. *Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.—Dallas

1997, pet. ref'd); *see also Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006) (fact-finder's discretion to impose any punishment within prescribed range is essentially "unfettered").

However, a sentence falling within the applicable range of punishment might be cruel and unusual in the "exceedingly rare" or "extreme" case in which the sentence is grossly disproportionate to the offense. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Solem v. Helm*, 463 U.S. 277, 289–90 (1983); *Barrow*, 207 S.W.3d at 381. "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77. To address a proportionality claim, we must first compare the gravity of the offense committed against the severity of the sentence. *Reynolds v. State*, 430 S.W.3d 467, 471–72 (Tex. App.—San Antonio 2014, no pet.); *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing *Solem*, 463 U.S. at 291–92); *see also McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). A sentence is grossly disproportionate to a crime only when an objective comparison of the gravity of the offense against the severity of the sentence reveals the sentence to be extreme. *Harris v. State*, 204 S.W.3d 19, 29 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). If we determine the sentence to be grossly disproportionate to the crime committed, we then compare (1) sentences for similar crimes in the same jurisdiction and (2) sentences imposed for the commission of the same crime in other jurisdictions. *Reynolds*, 439 S.W.3d at 471–72; *Moore*, 54 S.W.3d at 542.

Mathews argues the evidence establishes she has never been convicted of a criminal offense prior to this one, she regretted her actions and realized they were wrong, and she had been punished through the loss of her parental rights to D.B. However, Mathews admitted to punching D.B. in the face, requiring D.B. to remove her clothes, and hitting D.B. at least forty times with a belt. D.B. had bruises on her face and welts and bruises from her neck to the middle of her thighs. D.B. ran out of the apartment without any clothes on, sought help from a neighbor,

and appeared to be very frightened her mother would find her. Mathews does not point to any evidence in the record explaining how the eight-year sentence assessed by the trial court is grossly disproportionate to the violent offense she committed. Having considered the evidence, we cannot conclude the trial court's decision to sentence Mathews to eight years' imprisonment was grossly disproportionate to her conduct. We resolve Mathews's first issue against her.

In her second issue, Mathews asserts the trial court violated her due process rights by failing to consider the full range of punishment. *See* U.S. CONST. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"). Mathews specifically complains that, at the conclusion of the evidence, the trial stated it would not hear any closing arguments and sentenced her to eight years' imprisonment without acknowledging it would consider her application for community supervision.

Mathews did not object at trial or in a motion for new trial that the trial court violated her right to due process by failing to consider the entire range of punishment. However, the right to be punished after consideration of the full range of punishment "is a substantive right necessary to effectuate the proper functioning of our criminal justice system," and is classified as a waivable-only right. *Grado v. State*, 445 S.W.3d 736, 741–43 (Tex. Crim. App. 2014); *see also Marin v. State*, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993) (defining "waivable only" rights as those that "the judge has an independent duty to implement" absent effective and express waiver by defendant), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). As a result, a complaint that the trial court failed to consider the full range of punishment may be raised for the first time on appeal. *Grado*, 445 S.W.3d at 741–43.

A trial court's arbitrary refusal to consider the entire range of punishment constitutes a denial of due process. *Grado*, 455 S.W.3d at 739. Due process requires the trial court conduct itself in a neutral and detached manner. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Brumit*

*v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). However, absent a clear showing of bias, we presume the trial court's actions were correct. *Brumit*, 206 S.W.3d at 645. Indications that the trial was not biased arise from a record that: (1) shows the trial court did not make any comments suggesting it considered less than the full punishment range; (2) establishes the trial court heard extensive evidence before assessing punishment; and (3) contains explicit evidence the trial court considered the full range of punishment. *Id.* at 645.

The trial court heard extensive evidence prior to sentencing Mathews. This evidence included testimony from four witnesses, including Mathews, that being sentenced to prison would not benefit her, she had been sufficiently punished through the termination of her parental rights to D.B., she was not a danger to anyone, and she could be a productive member of society. The trial court asked questions of several of these witnesses, gave no indication it was not considering the testimony, and made no comments that it was considering less than the full punishment range. The evidence also showed, however, that Mathews inflicted severe injuries on D.B. and initially refused to take responsibility for her actions. Rather, Mathews blamed the incident on D.B. and indicated that D.B. should be placed into foster care because she would have it "too good" if she was released to Mathews's mother while Mathews was sent to jail. At trial, Mathews continued to point to D.B.'s behavior to justify the beating and testified she just lost control while beating D.B. While out on bond, Mathews failed to comply with all court-ordered services in the companion civil case pertaining to Mathews's parental rights to D.B. Mathews was also held in contempt for violating a court order by contacting D.B. at her school, indicating she might not be successful on community supervision.

In the absence of any indication that the trial court did not consider the full range of punishment, we must presume the trial court was fair and impartial. *Id.* We conclude that, under the facts of this case, Mathews has failed to demonstrate the trial court arbitrarily refused to

consider community supervision before it assessed punishment of eight years' imprisonment. We resolve Mathews's second issue against her.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140884F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RACHEAL MEACHELL MATHEWS, Appellant

No. 05-14-00884-CR V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 380-82553-2013.
Opinion delivered by Justice Fillmore,
Justices Stoddart and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of October, 2015.