

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00803-CR

Kelvin James **BROWN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 2020-0167-CR
Honorable Robert E. Cadena, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:          Luz Elena D. Chapa, Justice
                  Irene Rios, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: September 25, 2024

AFFIRMED

Appellant Kelvin James Brown appeals his arson conviction claiming (1) the evidence is insufficient to support his conviction, and (2) his fifty-year sentence constitutes cruel and unusual punishment. We affirm.

### BACKGROUND

Brown was charged with committing arson of a habitation, a first-degree felony. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E), (d)(2). Before trial, Brown filed his original and amended motion to quash the indictment claiming the indictment failed to give him notice of the

corroborating facts that would be sufficient to convince the trier of fact that he started a fire by "igniting a piece of paper[,]" and thus intended to damage or destroy a habitation. The motion was denied. Following a bench trial, the trial court found Brown guilty of committing arson of a habitation.

Prior to his sentencing, Brown filed a motion for the trial court to reconsider its findings and set aside the guilty verdict. Brown argued the evidence at trial proved the paper was ignited by a microwave, rather than by Brown. He thus argued a material variance existed between the indictment's language and the evidence at trial because he did not actually start the fire, and therefore, the guilty verdict should be reversed. The trial court denied the motion and set Brown's case for sentencing.

The trial court sentenced Brown to fifty years in prison. Additionally, the trial court ordered his sentence to run consecutively to another sentence he was currently serving. Brown appeals.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, Brown asserts the evidence is insufficient to prove he committed arson. Brown contends a variance exists between the indictment and the State's evidence involving how the fire started. Otherwise, Brown does not challenge any other elements of the charged offense.

*A. Standard of Review and Applicable Law*

"In jury trials and in bench trials, we view the evidence in the light most favorable to the verdict in order to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt." *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

We examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in favor of the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable

doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). The fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Moreover, the standard of review "gives full play to the responsibility of the [fact finder] fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

In reviewing the sufficiency of the evidence, we may consider "'events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Circumstantial evidence is as probative as direct evidence in establishing guilt, and we review circumstantial and direct evidence under the same standard of review. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

"An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*.

A person commits first-degree arson if he starts a fire, regardless of whether the fire continues after ignition, with intent to destroy or damage any habitation knowing that the habitation is located on property belonging to another. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E), (d)(2).

*B. Analysis*

Here, Brown was incarcerated when he committed the offense at issue. A riot had started prior to a cell search of the unit where Brown was housed. The inmates were destroying property by throwing TVs and their tablets while refusing to follow instructions. Brown was not initially identified as one of the inmates involved at the beginning of the riot. After a fire was started, the correctional officers at the facility administered tear gas into the unit. Video footage was obtained of the incident from cameras in the units.

Based on the video footage, correctional officers and the sergeant from the Val Verde Sheriff's Office who investigated the incident identified Brown as the inmate who started the fire. Particularly, Brown can be identified in the video footage wearing black and white tennis shoes. Once the riot begins, the video footage shows the inmates, including Brown, headed towards their bunks to grab towels to help protect their faces from the tear gas. Brown is then seen standing at what has been identified by witnesses as the microwave's location, presumably working the microwave. Soon thereafter, Brown walks to the other side of the room and uncovers the trash can, takes the trash bag out, and places the trash bag and trash-can lid on the floor. Brown then walks back to the microwave area, takes a paper napkin out of the microwave that is visibly on fire, and walks back to the trash bag, and places the ignited paper napkin on top of the trash bag, also igniting the trash bag. Additional video footage shows Brown next returning to the microwave area and then back to the ignited trash bag carrying what appears to be additional paper. The investigating officers testified about the damage caused by the fire.

Brown testified in his defense. Brown acknowledged that he went to the back area of the unit to get a wet towel to cover his face to avoid the effects of the tear gas but denied any involvement in the riot. While also acknowledging that he used the microwave, Brown claimed he was only using it to heat his food. Specifically, Brown recounted retrieving a tortilla from his bunk,

then placing it and a paper napkin in the microwave to heat it. Because the riot and the correctional officers distracted him, Brown claimed the tortilla and napkin caught on fire. Brown explained he removed the tortilla and napkin that were on fire and took it to the trash can. Next, Brown said he took out the trash bag from the trash can, placed it and the napkin that was on fire on the floor, and stomped on it to try and prevent any further fire. Brown claimed he removed the tortilla and napkin from the microwave to stop the fire because he was concerned if he left it on fire in the microwave, it would cause more damage. Brown testified he did not plan to use the tortilla and napkin to cause a fire. However, Brown acknowledged he set the microwave timer for six minutes to heat a single tortilla.

Based on this record, the trial court as the fact finder could have reasonably determined that Brown was not heating up food during the height of the riot; but rather, intending to damage or destroy a habitation, Brown started a fire by placing the items, including the napkin, in the microwave, setting it for six minutes to ignite the paper, and then placing the ignited paper on top of the trash bag on the floor of the habitation. *See Jackson*, 443 U.S. at 319; *Nowlin*, 473 S.W.3d at 317. We conclude the evidence is legally sufficient to support the fact finder's guilty verdict. *See Robinson*, 466 S.W.3d at 172; *see also Jackson*, 443 U.S. at 319.

### C. Sufficiency in Light of the Alleged Variance

#### 1. Applicable Law

With respect to Brown's claim that a material variance exists, we note that a variance is a discrepancy between the allegations in the charging instrument and the State's proof at trial. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance arises when the State's evidence proves the defendant committed the crime as defined in the statute but proves it in a manner that varies from the specific allegations in the charging instrument. *Id.*

"Only a 'material' variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient." *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018). "This happens when the indictment, as written, 1) fails to adequately inform the defendant of the charge against him, or 2) subjects the defendant to the risk of being prosecuted later for the same crime." *Id*. "[I]n a sufficiency review, we tolerate variances as long as they are not so great that the proof at trial 'shows an entirely different offense' than what was alleged in the charging instrument." *Id*. (quoting *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012)).

### 2.     Analysis

A conviction for arson of a habitation requires the State prove the defendant started a fire, regardless of whether the fire continues after ignition, with intent to destroy or damage any habitation knowing that the habitation is located on property belonging to another. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E), (d)(2). The indictment here closely tracked the statute alleging Brown, "did then and there, with intent to damage or destroy a habitation located at the Val Verde County Jail, GEO facility, start a fire by igniting a piece of paper, knowing that the habitation was located on property belonging to another, namely GEO Group, Inc."

Brown argues this wording required the State to prove he started the fire by igniting the piece of paper but that the evidence conclusively proved the microwave ignited the paper. Essentially, Brown contends the State should have amended its indictment to give him notice that he "intentionally placed flammable material in the microwave to start a fire[,]" and the lack of such notice prevented him from adequately preparing his defense.

In a true variance case, some part of the allegation in an indictment is unproven. *See Ramjattansingh*, 548 S.W.3d at 547–49 (addressing variance created by the State's allegation of an "extra, made-up element" but failing to prove the same). This is not a variance case. Here, no part of the indictment was unproven. The proof presented at trial substantiated the State's

allegations. The State proved Brown committed the crime as defined in the statute and proved the commission of the crime in a manner that did not vary from the specific allegations in the charging instrument. That is, there was no discrepancy between the allegation in the indictment and the proof presented at trial. *See Phillips v. State*, 401 S.W.3d 282, 290 (Tex. App.—San Antonio 2013, pet. ref'd) (concluding there was "no variance between the pleading and the proof"). The trial court found Brown guilty after concluding Brown started a fire "by igniting a piece of paper" when he placed the paper napkin in the microwave and set the timer for six minutes.

For these reasons, it cannot be said that the indictment failed to adequately inform Brown of the charge against him or that he is at risk of being prosecuted later for the same crime. *Cf. Roy v. State*, 76 S.W.3d 87, 101–02 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (explaining a variance was material because the State "proved an offense different from the offense alleged in the indictment and set out in the jury charge").

Accordingly, we overrule Brown's first issue.

### CRUEL AND UNUSUAL PUNISHMENT

In his second issue, Brown argues his fifty-year sentence ordered to be served consecutively after serving one of the sentences he is presently incarcerated for constitutes cruel and unusual punishment violating the Eighth Amendment to the United States Constitution. *See* U.S. CONST. amend. VIII.

However, Brown did not assert any objection when the trial court imposed the sentence and did not raise his complaint in a post-judgment motion. By failing to raise his complaint in the trial court, Brown forfeited his opportunity to present the claim on appeal. *See* TEX. R. APP. P. 33.1(a); *Burt v. State*, 396 S.W.3d 574, 577–78 (Tex. Crim. App. 2013) (stating "[a]n appellant fails to preserve error by failing to object when he had the opportunity"). Texas courts have held a claim of disproportionate, cruel and unusual punishment must be raised in the trial court to be

preserved for appellate review. *See Schneider v. State*, 645 S.W.2d 463, 466 (Tex. Crim. App. 1983); *Reynolds v. State*, 430 S.W.3d 467, 471 (Tex. App.—San Antonio 2014, no pet.); *see also Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a[n intermediate] appellate court should ordinarily review on its own motion[;] . . . it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue.").

Nonetheless, we further agree with the State that Brown's argument lacks merit. "Sentences that fall within the statutory limits are generally not considered excessive under the Eighth Amendment." *Reynolds*, 430 S.W.3d at 471; *see also State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). Arson of a habitation is a first-degree felony with a punishment range from five to ninety-nine years of imprisonment, or life imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32, 28.02(a)(2)(E), (d)(2). To determine whether a sentence is grossly disproportionate to the defendant's offense, "a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)).

Prior to committing arson while incarcerated, Brown was serving consecutive sentences for manslaughter, tampering with evidence in relation to the manslaughter charge, and an unrelated felony evading arrest with a vehicle charge. Brown had also been previously convicted of felony theft of a firearm, assault family violence, theft, and evading arrest. Additionally, during his incarceration, Brown had been identified as the initial aggressor in violent conduct towards other offenders and correctional staff in no less than ten incidents. While reading a prepared statement to the trial court during his sentencing hearing, Brown continued to deny committing arson and failed to take responsibility for any of his criminal behavior. On this record, Brown's sentence is not unconstitutionally disproportionate, and thus does not constitute cruel and unusual punishment.

*See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case[s].")

Accordingly, we overrule Brown's second issue.

## CONCLUSION

Having overruled Brown's two issues on appeal, we affirm the trial court's judgment.

Irene Rios, Justice

Do not publish